# CHARLESTON.

HOPE NATURAL GAS COMPANY *v.* GRANT P. HALL, *State Tax Commissioner of West Virginia et al.*

(No. 5735)

Submitted September 2, 1926.   Decided September 21, 1926.

1.   COMMERCE—CONSTITUTIONAL LAW—TAXATION—*Statute Taxing Mineral Products Held Not to Violate Commerce Clause of Federal Constitution; Statute Taxing Mineral Products Held Not to Deny Equal Protection of Law; Statute Taxing Mineral Products Does Not Violate Constitutional Requirement of Equality and Uniformity of Taxation (Acts W. Va. Ex. Sess. 1925, c. 1; Const. U. S. Art. 1, § 8; Const. W. Va. Art. 10, § 1; Const U. S. Amend. 14).*

     Chapter 1 of the Acts of the Legislature of West Virginia, passed at the Extraordinary Session, 1925, violates neither the State nor the Federal Constitution.   (p. 276.)

2.   CONSTITUTIONAL LAW—*Within Reasonable Limits, State Legislature May Classify Various Occupations for Taxation*

*and Impose different Specific Taxes, if Enactment Applies Alike to All Within Each Class (Const. U. S. Amend. 14).*

Within reasonable limits the State Legislature may classify various occupations for taxation and may impose different specific taxes thereon, provided the enactment applies alike to all within each class.   (p. 277.)

3.   COMMERCE—*State Legislature May Not, Under Any Formula, Lay Direct Tax on Gross Proceeds of Interstate Commerce, Except Where it is in Lieu of all Other Taxes and Amounts to No More Than Ordinary Tax on Property (Const. U. S. Art. 1, § 8).*

The Legislature may not under any formula or characterization lay a direct tax on the gross proceeds of interstate commerce, except where such tax is in lieu of all other taxes and amounts to no more than the ordinary tax on property. (p. 278.)

4.   SAME—*State May Take Into Consideration Gross Proceeds of Commodity Produced Therein and Sold in Another State, But Only to Determine Its Value Within State (Acts W. Va. Ex. Sess. 1925, c. 1, § 2a; Const. U. S. Art. 1, § 8).*

Under Section 2a, Chater 1, *supra,* the State may take into consideration the gross proceeds of a commodity produced in this State and sold in another State, but only for the purpose of determining the value of such commodity *within the State* and before it enters interstate commerce.   (p. 279.)

WOODS, LITZ, JUDGES, Dissent.

Appeal from Circuit Court, Kanawha County.

Suit by the Hope Natural Gas Company against Grant P. Hall, State Tax Commissioner, and others for an injunction. From a judgment affirming a judgment for plaintiff, defendants appeal.

*Affirmed in part; reversed in part.*

*Howard B. Lee,* Attorney General, *R. Dennis Steed* and *R. A. Blessing,* Assistant Attorneys General, *John T. Simms,* Counsel for State Tax Commissioner, *T. C. Townsend* and *Fred O. Blue,* for appellants.

*H. D. Rummel, Charles Powell, Kemble White, Anthony F. McCue, S. E. W. Burnside, Edward M. Borger* and *Arthur E. Young,* for appellee.

HATCHER, JUDGE:

The Bill in this case was filed in the Common Pleas Court of Kanawha County in October, 1925. That court, sustaining the contention of plaintiff in part, held that Section 2a of Chapter 1, of the Acts of the Legislature of West Virginia, passed at the Extraordinary Session, 1925, "when tested by its practical operation and effect, substantially burdens and interferes with interstate commerce", and accordingly enjoined defendants from enforcing the said Act against the plaintiff, as to the gas sold by it in other states.

The judgment of that court was upheld by the circuit court of Kanawha County, and the case is here on the appeal of defendants.

From an agreed statement of facts, it appears that plaintiff is the owner of leases on 860,750 acres of oil and gas territory situated in twenty-five counties in the state of West Virginia; that on this territory it now has 3178 producing gas wells from which it secured 23,194,711,000 cu. ft. of gas for the year ending June 1, 1925; that it purchased from other producers of gas in the state of West Virginia during that period 25,456,947,000 cu. ft. of gas, making a total of 48,651,-658,000 cu. ft. of gas produced and purchased by it during that year; that it owns and operates several thousand miles of gathering lines of pipe which range from 2 to 6 ins. in diameter, and approximately 1300 miles of marketing or trunk lines ranging from 8 to 20 ins. in diameter; that the gas is kept continuously moving through plaintiff's pipe lines by means of 42 compressing stations; that more than 80% of the gas it produces and purchases is transported through its pipe line system to the states of Ohio and Pennsylvania; that the gas, in the language of the Stipulation, "continues to flow in an uninterrupted and unbroken stream from the time it leaves the wells of the plaintiff or reaches its gathering lines from the wells or lines of the producers from whom it purchases such gas, until it is delivered to the final point of consumption either upon plaintiff's lines or the lines connected with its system"; that for the year 1925 the plaintiff paid taxes as follows: property tax $670,718.62, corporation tax (on

capital stock year ending June 30, 1925) $5,440.00, public
service commission assessment $5,062.50, gross sales tax to
June 30, 1925, $22,513.27, corporation license tax, Parkers-
burg, $10.50, franchise tax, Parkersburg, $7,542.77, and total
of $711,287.66; that the rate of levy for state purposes in the
year 1925 was 14c on the $100.00 valuation, and that of the
$670,718.62 property tax, the sum of $51,187.50 was collected
for exclusive State purposes; that the average price paid by
plaintiff for the gas purchased by it during the period begin-
ning January 1, 1925 and ending October 1, 1925, was ap-
proximately 17c per 1000 cu. ft.; that the average price re-
ceived by it for the gas which it sold within the state of West
Virginia during that period approximated 30c per 1000 cu.
ft.; and that the average price which it was receiving for gas
in the states of Ohio and Pennsylvania at the time this suit
was instituted was approximately 36c per 1000 cu. ft.

The plaintiff's main contentions are, that this Act purports
to tax interstate commerce and violates Art. 1, Sec. 8 of the
Federal Constitution; that the Act denied to plaintiff the
equal protection of the law and violates the Fourteenth
Amendment of the Federal Constitution, and that the taxes
sought to be imposed by the Act are not equal and uniform,
and are in violation of Art. 10, Sec. 1, of the Constitution of
West Virginia.

Section 2a of the Act is as follows:

"Upon every person engaging or continuing
within this state in the business of mining and pro-
ducing for sale, profit, or use, any coal, oil, natural
gas, limestone, sand or other mineral product, or
felling and producing timber for sale, profit or use,
the amounts of such tax to be equal to the value
of the articles produced as shown by the gross pro-
ceeds derived from the sale thereof by the producer
(except as hereinafter provided), multiplied by the
respective rates as follows: Coal, forty-two one-
hundredths of one per cent; oil, one per cent;
natural gas, one and seventeen-twentieths of one
per cent; limestone, sand or other mineral product,
nine-twentieths of one per cent; timber, nine-twen-
tieths of one per cent. The measure of this tax is

the value of the entire production in this state, re-
gardless of the place of sale or the fact that de-
liveries may be made to points outside the state.''

1

By the terms of the statute the tax is to be calculated on
the value of the article produced, and that value is to be
shown by the gross proceeds of its sale. Art. 1, Sec. 8, of the
Federal Constitution as interpreted by Federal decisions, de-.
nies to a state the right to impose a direct tax on the gross
proceeds of interstate commerce, except as hereinafter noted.
A large per cent of the commodities named in the statute is
sold in other states. The plaintiff contends that as the Act
contains no exception it indicates a plain intention to tax the
gross proceeds of sales in interstate commerce. There is a pre-
sumption, however, that the Legislature did not intend to
violate any provision of the Federal Constitution. *Pipe Line
Co.* v. *Hallanan,* 87 W. Va. 396; *St. Louis S. W. Ry. Co.* v.
*Arkansas,* 235 U. S. 350. In fact it has been declared our
duty to ''restrain the operation of a statute within narrower
limits than its words import'', when satisfied that a literal
interpretation will include cases not intended by the Legisla-
ture. *Ry. Co.* v. *Conley,* 67 W. Va. 129 (pt. 28 syl.). Con-
sequently, we are warranted in presuming that the Legisla-
ture did not mean to include, as an element of value, so much
of the gross proceeds of the sale of an article in interstate com-
merce, as is represented by the cost of transportation, and
we restrain the operation of the statute accordingly. This
presumption and this limitation are strengthened by the con-
cluding sentence of the statute, whereby the measure of the
tax is declared to be the value of the product *in this state,*
regardless of place of sale or delivery outside of state. If
the sale of a commodity produced in this state imposes on the
seller delivery in another state, then the sale price necessarily
includes the cost of the delivery. Such *sale price* would not
reflect the worth of the commodity *in the state,* but the worth
within the state plus the cost of transportation. If the taxa-
tion value of the products named in the statute be limited to
their value *in the state,* and before they enter interstate com-

merce, the statute does not manifest a purpose to violate Art. 1 of the Federal Constitution, and we so hold. *Am. Mfg. Co. v. St. Louis,* 250 U. S. 459.

2

In *Bell's Gap Rr. Co.* v. *Penn.,* 134 U. S. 232, the same contention that plaintiff now advances here was made.against the validity of a Pennsylvania taxation Act. But the Supreme Court held: "The provision in the XIV Amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. * * * It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products, it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State Legislature, or the people of the state in framing their Constitution. * * * We think that we are safe in saying that the XIV Amendment was not intended to compel the states to adopt an iron rule of equal taxation." This doctrine has been repeatedly affirmed. *Express Co.* v. *Seibert,* 142 U. S. 339; *Clark* v. *Titusville,* 184 U. S. 329; *Armour Packing Co.* v. *Lacy,* 200 U. S. 226; *Citizens Tel. Co.* v. *Fuller,* 229 U. S. 322; *Mich. Cent. Ry. Co.* v. *Powers,* 201 U. S. 245; *Heisler* v. *Thomas Col. Co.,* 260 U. S. 245. "The selection of all who are engaged within the state in mining ore or producing ores on their own account, * * * as the subjects of an occupation tax is permissible". *Oliver Iron Co.* v. *Lord,* 262 U. S. 245.

The charge that the statute imposes double taxation is also not well founded. "Double taxation in a legal sense does not exist unless the double tax is levied upon the same property within the same jurisdiction. Plaintiffs in error pay one tax with respect to property, another with respect to the privilege

or occupation: hence the taxation is not double.'' *Ohio Tax Cases,* 232 U. S. 576 (593-4). The case of *Dawson* v. *Ky. Dist. and Warehouse Co.,* 255 U. S. 288, relied on by plaintiff does not apply here. As distinguished by the Supreme Court in the *Oliver Mining Co.* case, the tax in the *Dawson* case ''was not laid on any business, but on the mere exertion by an owner of distilled spirits of his right to withdraw them from a bonded warehouse and had none of the ordinary incidents of an occupation tax.''

The foregoing decisions uphold the right of the legislature to classify the subjects of taxation. When the right to classify is conceded, it necessarily follows that the legislature has the right to select the differences upon which the classification will be based. *Citizens Tel. Co.* v. *Fuller, supra.* No proof is offered that the classification of the statute is unreasonable. The statute makes no discrimination in favor of one as against another of the same class. We therefore see no repugnance in the statute to the Fourteenth Amendment.

3

Plaintiff's third proposition is based on the provision in the Act for a deduction of $10,000.00 from the values or from the gross income taxed. Statutory exemptions from taxation are generally upheld when they apply alike to all property of the same class, and are not unreasonable or arbitrary. No facts are presented to show that this exemption is unreasonable. In *Pipe Line Co.* v. *Hallanan, supra,* an exemption from taxation of pipe lines under ten miles was under consideration. The court stated that as such lines were owned by small producers and were not used to any considerable extent in the regular business of transporting oil, these facts offered a ''reasonable basis for the classification thus made''. May we not as well say here that the mine which does not do a gross business of more than $10,000.00 a year is owned by a *small producer,* that such mine is not engaged to any considerable extent in the business of mining and that such facts furnish a reasonable basis for the exemption? The right of a legislature to classify subjects for taxation ''in terms of earnings instead

of in terms of method and use'' has also been directly recog-
nized and approved by the Supreme Court. ''The legislature,
in the exercise of its power of regulating fares and freights,
may classify the railroads according to the amount of the
business which they have done or appear likely to do. Whether
the classification shall be according to the amount of passeng-
ers and freight carried, or of gross or net earnings, during a
previous year   *   *   *   is a matter within the discretion of
the legislature. If the same rule is applied to all railroads of
the same class, there is no violation of the constitutional pro-
vision securing to all the equal protection of the laws.'' *Dow*
v. *Beidleman*, 125 U. S. 680 (691). The immunity favoring
gross incomes not exceeding $10,000.00 does not discriminate
in favor of one, as against another of the same class, and
therefore presents no arraignment of the right to classify.
''If the law operates upon every person within the relation
or circumstances provided for, it is sufficient as to uniform-
ity.'' *McAunich* v. *Rr. Co.*, 20 Iowa 338.

4

The defendant's main contention is that under the facts
developed in this case, the state has the right under Sec. 2a to
calculate the tax on the gross proceeds of the sale of the plain-
tiff's gas, sold without the state. Their brief contends ''there
is no tax on the sale or the transportation of the gas or on
the proceeds from the sale thereof'', but that the gross sales
price is simply the taxable measure of the value of the com-
modity.

It is conceded as defendants assert, that mining (when con-
sidered apart from transportation) is not interstate commerce.
It is immaterial, for the purpose of this discussion, whether
plaintiff's pipe line system is a mere incident to its business,
as defendants contend, or an integral part thereof, as plain-
tiff maintains. The important factor is that by means of this
system, whether it be incidental or integral, plaintiff's gas
becomes a subject of interstate commerce. ''In order that
property in transit may be exempt from local taxation as a
subject of interstate commerce it is not essential that it be in

charge of some common carrier engaged in that class of business." *Oil and Gas Co.* v. *Ehrhardt*, 244 Ill. 634. From the time the product of a mine commences its final movement for transportation, it is governed and protected by the national law. *Coe* v. *Errol*, 116 U. S. 517 (525). "Natural gas is a lawful article of commerce and its transmission from one state to another for sale and consumption in the latter is interstate commerce." *Penn.* v. *W. Va.*, 262 U. S. 553. In *U. S. Fuel Co.* v. *Hallanan*, 257 U. S. 277, the transmission of gas to another state by a pipe line system similar in all respects to that of plaintiff was held to be interstate commerce.

It may be admitted, as defendants contend, that the "incidental facility of transportation" increases the value of the gas before it enters the pipe lines. Such an admission, however, in no wise disturbs the fact that the average price received by plaintiff for gas sold without the state is approximately six cents higher than the *average* (not the occasional or exceptional) price of gas sold by plaintiff within the state. Neither does the admission alter the fact that it necessarily costs plaintiff something to transmit the gas from the place of production or purchase to the state line, and that the cost of transmission is included in the sales price. "The gas carried outside the state is sold for more than that used therein, but this naturally would be so, considering the additional pipe lines, compressors, and labor employed in the longer transmission." *Penn* v. *W. Va., supra.*

In *Wallace* v. *Hines*, 253 U. S. 66 (69), the Supreme Court said: "The only reason for allowing a state to look beyond its borders when it taxes the property of foreign corporations is that it may get the true value of the things within it, when they are part of an organic system of wide extent, that gives them a value above what they otherwise would possess. The purpose is not to expose the heel of the system to a mortal dart—not, in other words to open to taxation what is not within the state." By parity of reasoning we can as well say that the only reason for permitting consideration of the price plaintiff receives for delivering gas through its transmission system to another state, is to get the true value of the

gas within the state before it enters interstate commerce, and that purpose is not to open to taxation interstate commerce itself. "Under no formula can a state tax things wholly beyond its jurisdiction." *Union Tank Line Co.* v. *Wright,* 249 U. S. 275.

Throughout a century of attempted municipal encroachment on Federal authority, the Supreme Court has trumpeted the inhibition that a state cannot lay a direct tax on the gross proceeds derived from interstate commerce, except where such tax is in lieu of all other taxes and amounts to no more than the ordinary tax on property. *Postal Tel. Co.* v. *Adams,* 155 U. S. 688; *U. S. Express Co.* v. *Minn.,* 223 U. S. 335. It is true that a modification of this rule is indicated in *State Tax on Rr. Gross Receipts,* 82 U. S. 284, *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S 217, and *Ficklen* v. *Shelby Co.,* 145 U. S. 1. But the Tax Receipts decision was disapproved·in *Phila. and S. M. Co.* v. *Penn.,* 122 U. S. 326 (342), the *Maine* case was set apart as "the extreme case" in *Galveston* v. *Texas,* 210 U. S. 217, and in *Crew Levick Co.* v. *Penn,* 245 U. S. 298, the Ficklen decision was destroyed as a precedent by its characterization as "exceptional". *Crew Levick Co.* v. *Penn, supra, Fargo* v. *Mich.,* 121 U. S. 230, *Phila. and S. M. Co.* v. *Penn, supra, Galveston* v. *Texas, supra,* and other Federal decisions deny, in express terms, the right of the state to tax the gross proceeds derived from interstate commerce, when the property of the corporation is otherwise taxed, as it is in the present case. Commenting on *Phila. and S. M. Co.* v. *Penn,* the Supreme Court said, in the *Galveston* case: "We regard this decision as unshaken, and as stating established law." It is a tradition of our court to follow, not *exceptional* or *extreme* decisions, but those which are *unshaken* and which state *established law.*

There is a line of cases, including *Home Ins. Co.* v. *N. Y. State* 134 U. S. 594, *Flint* v. *Stone Tracy Co.,* 22 U. S. 107, *Peck* v. *Lowe,* 247 U. S. 165, *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321, and *Hump Hairpin Co.* v. *Emerson,* 258 U. S. 290, which has upheld the right of a state to tax the *net income* of a corporation, derived from interstate commerce. The

reasons supporting these decisions are that such tax is not imposed directly upon the proceeds of interstate commerce, is not computed upon it, and that such assessment, so far as interstate commerce is concerned, is "incidental, remote, and unimportant, and is therefore constitutional". In *Glue Co.* v. *Oak Creek, supra,* the distinction between a direct tax and one which was an indirect burden upon interstate commerce, is sharply drawn. After referring to the case of *Peck* v. *Lowe, supra,* the court in the *Glue Co.* case said:

> "The distinction between a direct and an indirect burden by way of tax or duty was developed, and it was shown that an income tax laid generally on net incomes, not on income from exportation because of its source or in the way of discrimination, but just as it was laid on other income, and affecting only the net receipts from exportation after all expenses were paid and losses adjusted and the recipient of the income was free to use it as he chose, was only an indirect burden. The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise."

In determining whether a tax is a direct burden on interstate commerce, the Supreme Court has also repeatedly held that it would regard the effect and operation of the exaction, and disregard the manner in which the taxing scheme was characterized. *Western Union Tel. Co:* v. *Kansas,* 216 U. S. 1; *Galveston etc. Ry. Co.* v. *Texas, supra; Kansas City Ry. Co.* v. *Kansas,* 240 U. S. 227 (231). The practical operation of the statute as contended for by defendants would be that the State of West Virginia would exact from the plaintiff $1.85 of every $100.00 it received from the sale of its gas in Ohio and Pennsylvania. This would be a direct burden on interstate commerce.

The cases of *Oliver Mining Co.* v. *Lord, supra,* and *Am. Mfg. Co.* v. *St. Louis, supra,* relied on so confidently by defendants, do not support their contention. In the *Mining Co.* case the statute under consideration limited the value of the ore for taxation to its worth ''at the place where the same is brought to the surface'', and even permitted the cost of mining the ore to be subtracted from that value. In the second case, a tax was upheld which measured the value of goods manufactured in a local factory, by sales made from warehouses without the state. The statute in that case was levied against ''each one thousand dollars, or fractional part thereof, of sales made by'', etc. The measure of the value of the manufactured article was therefore its *sales price* and not the *gross receipts* from its sale. No mention is made in the opinion of *freight paid,* or of the *gross proceeds* of the sales. We are warranted in assuming that the city did not attempt to include for taxation as a part of the sales price, the freight on the merchandise to the foreign warehouse. The reason impelling the decision is: ''In the outcome the tax is the same in amount as if it were measured by the sale value of the goods, but imposed upon the completion of their manufacture''. Consequently, the question of the validity of attempting to tax gross proceeds of the sales of articles delivered by the producer or manufacturer in a foreign state, did not arise and was not decided in either the *Mining Co.* or the *Mfg. Co.* case.

In *Pipe Line Co.* v. *Hallanan, supra,* the same argument now made by defendants here, was advanced and condemned as sophistical and amounting merely to a ''confusion of terms''. ''If it can be said that the legislature has the power to tax the privilege of engaging in a particular kind of intrastate commerce in the state, and then measure that tax by the amount of interstate commerce done, as well as by the amount of intrastate commerce, it would accomplish by indirection what, by the uniform holdings, it could not accomplish directly. It could under the guise of taxing the privilege of doing intrastate commerce take a part of the interstate commerce. It seems to us that the reasoning which seeks to

justify the adoption of the measure of the tax sought to be applied in this case is sophistical and amounts to simply a confusion of terms, the result being exactly the same as if the tax had been laid upon the privilege of engaging in interstate commerce. The courts do not look at the form which may be adopted to accomplish a particular purpose, but where it appears that the necessary effect of the procedure contended for is to produce a result which necessarily imposes a burden beyond the power of the legislature, the form will be disregarded.''

We therefore hold, under the facts in this case, that the defendants may not treat the gross proceeds of plaintiff's sales outside the state as the worth of its gas within the state, but that they may enforce the Act upon the value thereof *within the state,* and *before it enters interstate commerce.* The injunction herein will be accordingly so modified.

*Affirmed in part; reversed in part.*

WOODS, JUDGE: (*Concurring in part; dissenting in part.*)

This dissent from my brethren goes only to their conclusion that the law in its practical operation burdens unduly interstate commerce, and to the resultant relief thereby afforded the petitioner.

This Court holds, and rightly so, that the tax sought to be imposed here is an occupation tax. This fact being established, in logical sequence is the question of the mode and ascertainment of the value thereof. The reference by the statute to the gross receipts and to a certain percentage of the same, in determining the amount of the tax, is simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as to the amount of the occupation tax which should be levied. This reason finds support in *Maine* v. *Railway Co.,* 142 U. S. 217. There a state statute required every corporation, person or association operating a railroad within the state to pay an annual tax for the privilege of exercising its franchise therein, to be determined by the amount of its gross transportation receipts. The court said that this tax was not on the goods

nor on proceeds of the goods, and, if it can be said to affect interstate commerce in any way, it is incidently and so remotely as not to amount to a regulation of interstate commerce. The same court in *Ficklen* v. *Shelby County Taxing District*, 145 U. S. 1, approved the foregoing doctrine, holding that one cannot escape payment of percentage tax on its gross yearly earnings on the ground that its business for the year consisted entirely in sales to non-residents, and that the tax therefore would be a burden on interstate commerce.

Our Legislature adopted what it considered the most practicable way of determining the value of the business of the corporation in the state whose occupation was sought to be taxed. There was no measurement of the volume of gas at the mouth of the well obtainable. It adopted the only method left open by the petitioner under its plan by which its gas is produced to obtain the value thereof. Might not the state, therefore, urge that the corporation, since it chooses to combine local business and interstate business in such a way that the value of the former cannot be determined, cannot complain that the only method by which such value can be determined must necessarily include receipts from interstate commerce? No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privilege it bestows. *Home Insurance Co.* v. *New York*, 134 U. S. 594. The manner in which the value shall be assessed, the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion. It is not for us to suggest in any case that a more equitable mode of ascertainment or rate of taxation might be adopted than the one prescribed by the Legislature of the state; our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction. *Minot* v. *Philadelphia R. Co.*, 85 U. S. 206; *Coal & Coke Co.* v. *Tax Commissioner*, 59 W. Va. 607.

In interpreting the federal statute imposing a tax on any firm, corporation, or person carrying on or doing business of refining sugar, etc., based upon the gross annual receipts of such business, the court said, in *Spreckels Sugar Refining Co.*

v. *McClain*, 192 U. S. 397: "Clearly the tax is not imposed upon the gross annual receipts as property, but only in respect to the carrying on or doing the business of refining sugar. It cannot be otherwise regarded because of the fact that the amount of the tax is measured by the amount of the gross annual receipts." How apropos is this of the case under consideration? There, as here, an effort was made to get away from the language of the statute, upon the inquiry as to what the subject was and the nature of the tax.

*Ficklen* v. *Shelby County Taxing District, supra,* has not been overruled. (31 Harvard L. Rev., 763, note 156.) This decision makes it possible for the Supreme Court to permit taxes on taxable occupations to be measured in part by receipts not themselves directly taxable. It is contended that this decision was shaken by the latter decision of *Crew Levick Co.* v. *Commonwealth,* 245 U. S. 292. The opinion of the court distinguished the *Ficklen* case, on the ground that the tax in question in the latter case was not an occupation tax, as was the case in the former. The *Galveston* case, 210 U. S. 217, upon which the petitioner leans so confidently was likewise a case where the statute did not impose the tax as an occupation tax, Mr. Justice Holmes observing that the tax in question "is merely an effort to reach the gross receipts." This decision loses its force as a precedent when we recall that the greater part of the business of the railroad in the latter case was admittedly interstate. These facts need only to be stated to show the inapplicability of that decision to the case under consideration here, where the business of producing gas on which the tax is levied is intrastate.

Our Supreme Court held, in *Suttle* v. *Hope Natural Gas Co.,* 82 W. Va. 729, that: "Production of natural gas * * * is local in nature and clearly separable and distinguishable from the marketing or interstate portion of the industry." No case has been cited by counsel for the petitioner where the United States Supreme Court has condemned a state tax on wholly local or intrastate business of mining or manufacturing, even though the products or commodities mined or manufactured were sold in interstate commerce and the tax measured by the amount of

such sales. Following the line of reasoning, which the court lays down, to its logical conclusion, to support the contention that an occupational tax levied upon any other value than the price at the well would render the statute unconstitutional as a burden upon interstate commerce, it would follow that no tax whatever could be imposed, for the reason that the gas produced by the petitioner is flowing in interstate commerce from the time it escapes from its rock bed, even before reaching the surface.

: If the tax under § 2a affects interstate commerce, it does so only incidently, and therefore is not a regulation of, a burden on, or interference with, such commerce, and is not invalid on account of such incidental effect. As heretofore stated, the Supreme Court of the United States has repeatedly held that the consequential burden of proper local taxation on interstate relations and transactions, including sales, transportation and everything else that enters into such commerce, is incidental, not direct, hence not an invasion by the state of the domain of interstate commerce. *American Manufacturing Co.* v. *City of St. Louis,* 250 U. S. 459; *Oliver Iron Mining Company* v. *Lord,* 262 U. S. 172.

The two last mentioned cases are the most recent pronouncements of the court of last resort on the question under discussion. In the *Oliver Iron Mining Company* case, Minnesota had imposed a tax on persons engaged in the business of mining or producing iron ore, the amount of the tax being equal to six per centum of the valuation of all ores mined or produced in addition to all other taxes. The tax was assailed as being in conflict with the commerce clause of the federal Constitution. The court there said: "Plainly the facts do not support the contention. Mining is not interstate commerce, but, like manufacturing, is a local business, subject to local regulation and taxation. * * * Its character in this regard is intrinsic, is not affected by the intended use or disposal of the product, is not controlled by contractual engagements, and persists even though the business be connected with interstate commerce. * * * The ore does not enter interstate commerce until after mining is done, and the tax is imposed

only in respect to the mining. No discrimination against in-
terstate commerce is involved. The tax may indirectly and
incidentally affect such commerce, just as any taxation of rail-
road and telegraph lines does, but this is not a forbidden bur-
den or interference." The determinative question here is
answered in the *American Manufacturing Company Case.* The
Supreme Court of Missouri in that case (270 Mo. 40) said
of the tax: "We hold the tax in question is a tax upon the
privilege of pursuing the business of manufacturing these
goods in the city of St. Louis; that when the goods were manu-
factured the obligation accrued to pay the amount of tax rep-
resented by their production when it should be liquidated by
their sale by the manufacturer; that their removal from the
city of St. Louis and storage elsewhere * * * worked no change
in this obligation; that their sale by respondent wherever they
may have been stored at the time, whether it was done through
its home office in New York or the office of its factory in St.
Louis should have been reported in its return to the license
collector of the city of St. Louis, and the amount included in
fixing the amount payable on account of its license tax." The
Supreme Court of the United States disposed of this case in
the following language: "There is no doubt of the power of
the state, or of the city acting under its authority, to impose
a license tax in the nature of an excise upon the conduct of
a manufacturing business in the city. Unless some particular
interference with federal right be shown, the states are free
to lay privilege and occupation taxes. *Clark* v. *Titusville,*
184 U. S. 329, 46 L. Ed. 569, 22 Sup. Ct. Rep. 382; *St. Louis* v.
*United R. Co.,* 210 U. S. 266, 276, 52 L. Ed. 1054, 1058, 28
Sup. Ct. Rep. 630. The city might have measured such tax
by a percentage upon the value of all goods manufactured,
whether they ever should come to be sold or not, and have re-
quired payment as soon as, or even before, the goods left the
factory. In order to mitigate the burden, and also, perhaps
to bring merchants and manufacturers upon an equal footing
in this regard, it has postponed ascertainment and payment
of the tax until the manufacturer can bring the goods into
market. * * * In our opinion, the operation and effect of

the taxing ordinance are to impose a legitimate burden upon the business of carrying on the manufacture of goods in the city; it produces no direct burden on commerce in the goods manufactured, whether domestic or interstate, and only the same kind of incidental and indirect effect as that which results from the payment of property taxes or any other and general contribution to the cost of government. Therefore it does not amount to a regulation of interstate commerce.'' From the opinion of the court it appears that the case of *Crew Levick Company, supra,* relied on by the gas company here, was likewise relied on by the manufacturing company in opposition to the view of the court heretofore quoted—the court stating that it is ''so obviously distinguishable that particular analysis is unnecessary.'' The sales price of the goods on which the tax was levied, after they had been taken to other states would necessarily include the cost of transportation of the statute in this case, it is only such an indirect and the court in the last mentioned case went farther than is necessary to go in upholding the tax in this case which only permits the tax to be levied on sales made within the state.

The conclusion, as I view it, to be drawn from a consideration and analysis of the cases of the Supreme Court of the United States in point, is that the states will be permitted to indirectly encroach on federal authority by their taxing powers. In a federal system there must be reciprocal give and take between the whole and the several parts. If there be any interference with interstate commerce in the practical application of the statute in this case it is only such an indirect and incidental burden as is sanctioned by the federal decisions. The question of whether the state has imposed unduly a burden by the method of imposition of this tax upon interstate commerce being the only question with which I am at variance with my brethren, and the effects flowing from an affirmative holding thereon, I content myself with the statement that, after due consideration of all questions involved in the appeal, my conclusion is that the statute under consideration, without being limited in its operation as interpreted by the Court, violates no provision of either state or federal Con-

stitutions, and therefore it becomes our duty to uphold and enforce it.

Litz, President, concurring:

I concur in the opinion of the Court upholding the constitutionality of the statute, and am inclined also to the view expressed by Judge Woods that the levy of the tax on sales of gas by the plaintiff does not contravene the commerce clause of the Federal Constitution. The opinion seems to question the right of States to levy any tax which would affect or burden interstate commerce. The decisions of the United States Supreme Court consistently hold that the States may by appropriate taxation indirectly burden interstate commerce. As pointed out by Judge Woods, the case of *American Manufacturing Company* v. *St. Louis* apparently goes farther than is necessary to uphold the statute under consideration, given a liberal interpretation.