609 S.E.2d 877

KANAWHA EAGLE COAL, LLC, A West Virginia Corporation, Plaintiff Below, Appellant,

v.

TAX COMMISSIONER OF THE STATE OF WEST VIRGINIA, Defendant Below, Respondent.

No. 31791.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 9, 2004.

Decided Dec. 1, 2004.

617

Charles O. Lorensen, George & Lorensen P.L.L.C., Charleston, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Stephen Stockton, Senior Assistant Attorney General, Charleston, for the Respondent.

ALBRIGHT, Justice.

Kanawha Eagle Coal, LLC, ("Kanawha Eagle") appeals from the January 8, 2004, order of the Circuit Court of Kanawha County affirming the administrative decision of Appellee Tax Commissioner of the State of West Virginia ("Tax Commissioner") with regard to a severance tax assessment. The underlying tax ruling involves excess severance taxes related to freight charges paid by Kanawha Eagle to transport coal from a coal preparation plant to a river dock in West Virginia at which location the coal was reloaded into barges for final shipment to the buyer. The Tax Commissioner disallowed the freight charge deductions Kanawha Eagle took in submitting its severance tax documentation for amounts paid to CSX Railroad to transport coal from its preparation plant to the river dock.[1] Upon our review of this

---

1. While it appears that the freight deductions made by Kanawha Eagle may have included amounts paid as dock charges, we limit our consideration of this tax issue solely to the issue of freight charges paid by Kanawha Eagle to transport the coal at issue from the preparation

matter, we determine that under regulations promulgated by the West Virginia Department of Tax and Revenue ("Tax Department"), costs paid to a third party associated with transporting coal from a preparation plant to a river dock are deductible in determining the value of coal in making a severance tax assessment. Having determined that the lower court committed error by affirming the administrative decision upholding the excess severance tax assessment against Kanawha Eagle, we reverse.

## I.  Factual and Procedural Background

Kanawha Eagle operates underground coal mines in Boone and Kanawha Counties. The raw coal is conveyed to a nearby coal preparation plant where the coal is then sized, treated, and cleaned. This clean coal is stockpiled and ultimately shipped six miles via railroad or truck to a river dock facility. Title to the coal passes to the buyer when the coal is placed on barges after it reaches the dock facility.

By notice dated November 9, 2001, the Tax Commissioner issued an excess severance tax assessment against Kanawha Eagle for the period of January 1, 1998, through December 31, 2000. The assessment was for $118,979, an amount which represented $105,838 in severance taxes and $13,141 in interest for the stated period. In making the assessment, the Tax Commissioner took the position that Kanawha Eagle erroneously deducted certain transportation costs associated with moving clean coal from the preparation plant to the river dock facility as well as certain fees charged by the dock operators.[2]

Kanawha Eagle timely filed an objection to the tax assessment in the form of a petition for reassessment. In its petition, Kanawha Eagle contended that the Tax Commissioner wrongly denied it a deduction for transportation and dock charges in arriving at the gross value of clean coal for purposes of assessing the severance taxes at issue. When the Tax Commissioner failed to schedule a hearing within ninety days of the petition for reassessment,[3] Kanawha Eagle objected to the lack of a timely hearing[4] and sought to have the assessment dismissed on the basis of untimeliness.

On April 10, 2002, an administrative hearing was held on the reassessment petition filed by Kanawha Eagle. The only evidence introduced by the Tax Commissioner at the hearing was the notice of assessment. Kanawha Eagle offered the testimony of a witness and introduced various exhibits through this witness for the purpose of establishing that the only action taken with regard to the clean coal upon its arrival at the river dock is a change in the mode of transportation.[5]

In its ruling dated October 8, 2002, the administrative law judge denied the motion to dismiss on untimeliness grounds, finding that Kanawha Eagle had failed to demonstrate prejudice resulting from the six-day delay and also finding good cause for the delay due to the unavailability of a hearing examiner.[6] As to the substantive grounds for review, the administrative law judge upheld the Tax Commissioner's disallowance of the freight deductions in arriving at the gross value of the coal. The amount of the assessment was reduced, however, due to the Tax Commissioner's wrongful inclusion of severance taxes owed by a separate entity.[7] After reducing the assessment by the amounts wrongfully included, the revised

---

plant to the river dock. Because the river dock facility is operated by a wholly-owned subsidiary of Kanawha Eagle, any dock charges paid to that subsidiary were not paid to a third-party and are specifically outside the scope of this opinion.

2.  See supra note 1.

3.  See W.Va.Code § 11–10–9 (2002) (Repl.Vol. 2003).

4.  The hearing on the petition was held on the ninety-sixth day.

5.  The Tax Commissioner concedes this issue.

6.  The order also notes that the statute which provides for hearings to be held within a ninety-day period of the petition's filing does not provide for the dismissal of assessments in the event that appeals cannot be held within the prescribed time period. See W.Va.Code § 11–10–9.

7.  That separate corporate entity was Kanawha Eagle Limited Liability, a company that according to the administrative law judge has a different owner, files separate tax returns for all types of taxes, and has been recognized as a distinct taxable entity.

severance tax assessment was determined to be $59,186.93, with $51,876 representing the amount of the actual excess assessment and $7,310.93 the interest charges owing on that amount through September 15, 2002.[8]

Kanawha Eagle appealed the decision of the administrative law judge to the circuit court. As grounds for the appeal, Kanawha Eagle argued that the decision to uphold the assessment was erroneous "because 'gross value' of coal in the immediate vicinity where it is severed determined after application of post production processing does *not* include costs of transportation incurred with respect to clean coal transferred from a preparation plant via an independent trucker or railroad to a remote coal dock facility. . . ." After reviewing the parties' briefs and the record but without holding a hearing, the circuit court ruled in its January 8, 2004, order, that the Tax Department was not clearly erroneous in "disallowing deduction of Petitioner's freight and dock expenses from its preparation plant to the Winifrede Dock."[9] It is from this order that Kanawha Eagle seeks relief.

## II. Standard of Review

▆▆▆▆ Our review of this administrative matter is governed by the factors set forth in West Virginia Code § 29A–5–4 (1998) (Repl. Vol.2002).[10] We explained in syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996):

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded

deference unless the reviewing court believes the findings to be clearly wrong. Applying this standard to a lower court's decision to affirm an administrative decision, we held in syllabus point one of *Wheeling–Pittsburgh Steel Corp. v. Rowing*, 205 W.Va. 286, 517 S.E.2d 763 (1999): "Under the West Virginia Administrative Procedures Act, W. Va.Code ch. 29A, appellate review of a circuit court's affirmance of agency action is *de novo*, with any factual findings made by the lower court in connection with alleged procedural defects being reviewed under a clearly erroneous standard."

With these standards in mind, we proceed to determine whether the lower court committed error in affirming the Tax Commissioner's assessment of excess severance taxes against Kanawha Eagle.

## III. Discussion

The severance tax at issue is imposed on the privilege of engaging in the business of severing, extracting, reducing to possession, and producing coal for sale, profit, or commercial use. *See* W.Va.Code § 11–13A–3(a) (2002) (Repl.Vol.2003). The rate established by statute for assessing the severance tax is five percent of the "gross value" of the coal produced. W.Va.Code § 11–13A–3(b). While Kanawha Eagle suggests that the issue presented by this case involves a determination of the point at which the "gross value" of coal is calculated for purposes of assessing the severance tax, what is actually at issue is whether a subsequent loading of coal—one that occurs after the initial loading for shipment which takes place at the preparation plant following the completion of processing treatments such as cleaning, sizing, and sorting—is subject to taxation. To ad-

8. The administrative order indicates that interest continues to accrue at the amount of $13.49 "per day until this particular tax liability is fully paid."

9. The circuit court further held that "conducting the administrative hearing six days after the statutory directive does not constitute reversible error."

10. Under the provisions of West Virginia Code § 29A–5–4(g), reversal, vacation, or modification of an administrative decision is sanctioned when an individual's rights have been substantially prejudiced as a result of a ruling that is:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedures; or
(4) Affected by other error of law; or
(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

dress this issue, we must review the manner in which coal is valued under the severance tax statutes.

By statute, "gross value" for coal or other taxable natural resources is defined to mean "the market value of the natural resource product, in the immediate vicinity, where severed, determined after application of post production processing generally applied by the industry to obtain commercially marketable or usable natural resource products." W.Va.Code § 11–13A–2(c)(6) (1995) (Repl. Vol.2003). The statute further provides that for reporting purposes, "gross value" with regard to natural resources "is the gross proceeds received or receivable by the taxpayer." W.Va.Code § 11–13A–2(c)(6)(A). For purposes of assessing the severance tax, the treatment processes pertinent to coal which include "[c]leaning, breaking, sizing, dust allaying, treating to prevent freezing and *loading for shipment*" are all "considered as mining and part of the privilege taxed under this article [article 13A]." W.Va.Code § 11–13A–4(a), –4(a)(1) (1987) (Repl.Vol.2003) (emphasis supplied).

In 1992, the Tax Department promulgated rules to aid taxpayers in identifying how the "gross value" of natural resources would be assessed for severance tax purposes. By regulation, "gross value"

> in the case of natural resources means the market value of the natural resource product, in the immediate vicinity, where severed, determined after application of post production processing generally applied by the industry to obtain commercially marketable or usable natural resource products. The value of natural resource products produced shall be determined by the gross proceeds of sales in every instance in which a *bona fide* sale of such products is made at the point where production ends, and whether sold at wholesale or retail. *In determining the value of natural resource products delivered to purchasers there may be deducted from the gross pro-*

ceeds of sales so much thereof as the taxpayer can prove to be actual outgoing freight charges (paid by him) from the point at which shipment originates in this State to the point of delivery. However, no deduction is permitted for expenses incurred by him through the use of his own equipment in transporting items produced. No deduction is permitted for expenses incurred to transport items from the point of severance to the processing plant (or loading facilities), when treatment processes are considered part of the production or mining taxable as such pursuant to W.Va. Code § 11–13A–4. Further, no deduction will be allowed for sales commissions, royalties, or other costs, expenses or fees incurred by a producer and ultimately paid to third parties.

110 W.Va.R. *Taxation* § 13A–2.7 (emphasis supplied).

The regulations specifically address how freight charges are to be treated in the assessment process:

> In certain instances, producers and processors of natural resource products are permitted to deduct freight charges from the gross proceeds of sale or value to arrive at taxable value under the severance tax.
>
> In order to determine the value within the State and at the place where production or processing ends, there may be deducted from gross proceeds of sales certain outgoing freight charges actually incurred by the producer or processor, but no deduction will be allowed for expenses incurred by him through the use of his own equipment in transporting items produced except as provided in Sections 4.7.4, 4.7.6 and 4.7.7 of these regulations.[11]

110 W.Va.R. *Taxation* §§ 13A–4.7; –4.7.1 (footnote added).

█ The freight charges at issue in this case[12] represent transportation charges that Kanawha Eagle paid to CSX, a common carrier, to transport its fully processed clean coal over a six-mile route from its prepara-

---

**11.** These three sections allow deductions of freight charges associated with the producer's own equipment "if the costs are separately stated;" where a "fee is separately charged on the invoice," and if "adequate cost records are main-tained to document the transportation deduction." 110 W.Va.R. *Taxation* §§ 13A–4.7.4, –4.7.6, –4.7.7.

**12.** *See supra* note 1.

tion plant to a river dock location for reloading onto a barge for final delivery to the buyer.[13] Because the river dock is owned and operated by a wholly-owned subsidiary of Kanawha Eagle, the Tax Commissioner has taken the position that the taxpayer in this case is not entitled to the freight deduction ordinarily allowed for such transportation costs on the theory that it is merely shipping the coal to itself. To reach this result under the applicable statutory and regulatory provisions, however, requires the Tax Commissioner to encompass this subsequent stage of transportation within those specified activities that are set forth by statute as part of the treatment processes that are "considered as mining" and, therefore, subject to the severance tax. W.Va.Code § 11–13A–4(a)(1) (identifying "[c]leaning, breaking, sizing, dust allaying, treating to prevent freezing and loading for shipment" as taxable activities viewed as part of the mining process). In its attempt to fall within the statutorily specified processing activities that are subject to the severance tax, the Tax Commissioner argues that when the coal is reloaded at the river dock onto the barges for delivery this subsequent loading qualifies as a "loading for shipment." Id. Essentially, it is the position of the Tax Commissioner that each and every mode of transport of the clean coal after it leaves the preparation plant comes within the "loading for shipment" concept and is therefore subject to taxation as part of the original mining activity. Id.

The position advocated by the Tax Commissioner is that freight charges are not deductible when any form of reloading occurs because the coal is still being "processed" within the meaning of West Virginia Code § 11–13A–4(a)(1). Kanawha Eagle maintains that coal is loaded for delivery within the meaning of the severance tax statutory scheme only when it is initially loaded from the clean coal stockpile at the preparation plant onto rail cars. Emphasizing that nothing which affects the value of the coal occurs after the fully treated natural resource leaves the preparation plant, Kanawha Eagle suggests that the point when the coal first leaves the preparation plant is the only location which can qualify as the "loading for shipment" situs under the facts of this case. Kanawha Eagle posits that any subsequent loading of coal that occurs at the river dock is merely transloading or reloading and further that these subsequent transportation related activities fall outside the scope of the treatment processes specifically taxed by statute as part of the mining process. *See id.*

In arguing that the transfer of coal from a railcar to a barge qualifies as "loading for shipment" under the tax scheme at issue, Kanawha Eagle contends that the Tax Department is taking a position markedly at odds with both its previous stance on this issue and with the historical view of the point at which severance taxes are determined. As evidence of this divergence in positions, Kanawha Eagle cites to Publication TSD–210, through which the following is provided:

> Severance tax is imposed on the "gross value" of the coal. "Gross value" is determined by the sale price of the coal less freight expenses incurred in transporting the coal to a customer, if the transportation is performed by a common carrier. Freight expenses are also deductible when performed by the taxpayer, if the charges are separately stated on the invoice. Freight expenses related to the transporting of coal from a mine to a processing area are not deductible. Only outgoing freight charges incurred in shipping coal to a customer are exempt.

In that same publication, the following clarification is included: "The activities of loading for shipment or freezeproofing when performed by themselves are not sufficient to subject a person to the severance tax."

Applying this policy in its recent administrative ruling in 91–500SV,[14] the Tax Department determined that charges paid by a coal producer to an independent hauler were deductible:

> Based upon the case file it is clear that the Petitioner is correct in stating that trans-

---

**13.** There is no dispute that the charges incurred by Kanawha Eagle to transport coal from the mouth of the mine to the preparation plant are not subject to deduction as they are properly viewed as part of the mining process subject to the privilege tax at issue.

**14.** This decision was issued on April 28, 2000.

portation costs are deductible if paid by the Petitioner to an unrelated third party for delivery to the customer. It is also clear, that because the gross value of the severed coal (production) could end no later than the crusher, Petitioner is justified in claiming the full amount of the freight deduction.

Based on both the regulations and the position previously taken by the Tax Department, Kanawha Eagle argues that transportation costs which are incurred *after* the completion of the treatment processes (i.e.washing, crushing, screening, etc.) and which are paid to a third party are deductible. These transportation costs are distinct from the costs associated with transporting coal from the extraction site to the preparation plant.[15] Moreover, the act of dumping coal from a railcar to a barge by itself does not qualify as processing of the coal for purposes of assessing the severance tax under the position taken by the Tax Department in Publication TSD–210.

Kanawha Eagle argues that the position taken by the Tax Commissioner in this case is inconsistent with the manner in which severance taxes, or privilege taxes, are generally assessed. Longstanding principles of constitutional law require that to be upheld severance taxes must be assessed prior to the time when the natural resource enters the stream of commerce or stream of export. *See Coe v. Errol*, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886) (holding that goods are not subject to taxation until they have been shipped or placed with common carrier for ultimate transportation to another state). In applying a precursor to the severance tax, the business and organization tax, as it related to natural gas produced within this state, we held in *Hope Natural Gas Co. v. Hall*, 102 W.Va. 272, 135 S.E. 582 (1926), that the tax was valid provided that the gas was valued before transportation commences. *Id.* at 276–77, 135 S.E. at 583. In affirming this Court's decision, the United States Supreme Court stated: "The plain result of the opinion and final decree is to require that the tax be computed upon the value of the gas at the well, and not otherwise." *Hope*, 274 U.S. 284, 288, 47 S.Ct. 639, 71 L.Ed. 1049 (1927).

The Tax Commissioner views its subject tax assessment as conforming with Commerce Clause precedent, arguing that the coal at issue is not being placed in the stream of commerce until placed on the barge for final shipment to the customer. Presented in this fashion, the Commerce Clause cases do not aid us in resolving the issue of whether loadings of coal subsequent to the initial loading at the preparation plant fall within the taxable mining related activities set forth in West Virginia Code § 11–13A–4(a)(1). We think that the answer to the issue presented can be found in the language of the statutory provision defining "gross value." By definition, "gross value" is determined in reference to "the market value of the natural resource product, *in the immediate vicinity, where severed*, determined after application of post production processing...." W.Va.Code § 11–13A–2(c)(6) (emphasis supplied).

In making its argument, the Tax Commissioner focuses singularly on the term "loading for shipment," without proper consideration of the remaining language contained in the statute. If we were to accept the logic suggested by the Tax Commissioner that each and every change in transportation of coal following its departure from the preparation plant qualifies as a separate "loading for shipment" and a distinct taxable event, we would have to omit the statutory language that defines "gross value" in terms of valuing such resource "in the immediate vicinity" of the location from which the resource was severed. *Id.* While the transportation costs associated with moving the coal from the extraction situs to the preparation plant logically fall within the statutory scheme of taxing the processing and treatment of natural resources, there is no similar basis for viewing additional acts of transportation subsequent to the initial "loading for delivery" as part of the taxable mining process. Moreover, once the coal is transported following the initial "loading for delivery" it no longer can be said to be "in the immediate vicinity" of the severance or extraction situs. The severance tax statutory scheme has at its core the concept of assessing the value of the subject natural resource in close proximity to

---

**15.** *See supra* note 13.

the point of extraction and processing. By limiting its focus on "loading for delivery" as a taxable event without considering whether subsequent loadings that occur after the initial loading at the preparation plant fall outside the legislative definition of taxable treatment processes, the Tax Commissioner has taken a position that fails to comport with the clearly stated provisions of the severance tax statutes.

Having rejected the Tax Commissioner's modified view of what constitutes "loading for shipment" in terms of the taxable mining process, we determine that freight charges paid by a coal producer to a third party to transport fully processed clean coal from the coal preparation plant to the point at which title passes to the buyer are costs which are deductible from the gross proceeds of coal sales for purposes of assessing the severance tax imposed by West Virginia Code § 11–13A–3(a) under existing regulations promulgated by the Tax Department.[16] The initial loading of fully processed clean coal at the preparation plant for shipment is one of the specified activities viewed as a taxable event associated with the privilege of mining in this state. However, any reloading of coal that transpires after the initial loading at the preparation plant is part of the delivery process, rather than the mining process, and accordingly falls outside of the statutorily delineated activities that qualify as part of the taxable treatment processes performed upon coal set forth in West Virginia Code § 11–13A–4(a)(1). In disallowing the freight charges that Kanawha Eagle paid to CSX for transportation of the subject coal from the preparation plant to the river dock, the circuit court committed error.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby reversed.

Reversed.

Justice McGRAW dissents.

---

**16.** We reiterate, as discussed in footnote one, that freight or other handling costs, not paid to a third party by the coal producer or those costs which are paid to an entity substantially controlled by the producer, are not deductible charges.