# CHARLESTON.

TURKEY KNOB COAL CO. v. WALTER S. HALLANAN.

Submitted July 15, 1919. Decided July 17, 1919.

1. TAXATION—*Injunction—Collection of Illegal Tax.*
   Equity has jurisdiction at the suit of a party affected thereby to enjoin the collection of a tax levied without authority of law. (p. 403).

2. SAME—*Income Tax—"Fiscal year 1919."*
   The phrase "fiscal year 1919," as used in Chapter 7 of the Acts of the Legislature of 1919, extraordinary session, means the fiscal year ending June 30, 1919, and the tax thereby imposed is properly levied upon the net incomes of corporations returned for that year. (p. 403).

Appeal from Circuit Court, Kanawha County.

Bill for injunction by the Turkey Knob Coal Company against Walter S. Hallanan, State Tax Commissioner. Decree for defendant, and plaintiff appeals.

*Affirmed*

*Price, Smith, Spilman & Clay,* for appellant.
*John T. Simms,* for appellee.

RITZ, JUDGE:

The plaintiff by its bill in this cause seeks to enjoin the State Tax Commissioner from enforcing an assessment against it made, as claimed by the defendant, under the provisions of Chapter 7 of the Acts of 1919, extraordinary session.

Plaintiff is a West Virginia corporation and admittedly liable to pay the excise taxes provided by law. It made its

return as required by the provisions of chapter 3 of the Acts of 1915, Second extraordinary session. This return was filed in the office of the defendant on the second day of June, 1919, and showed the entire net income of the plaintiff for the calendar year 1918. Upon this net income the tax commissioner assessed a tax of one-half of one per cent under the act of 1915 and of one-fourth of one per cent under the provisions of chapter 7 of the acts of the extraordinary session of 1919. Plaintiff paid the assessment provided for by the act of 1915, but refused to pay the assessment under the act of 1919, claiming that said act did not authorize such assessment, and upon the refusal of the board of public works to relieve it therefrom, applied to the circuit court of Kanawha County for an injunction to prevent the collection of such assessment. Upon a hearing the relief asked was denied and plaintiff's bill dismissed, and this appeal is prosecuted to review that decree.

Plaintiff contends that the act of 1919, ·chapter 7 of the extraordinary session, properly construed, does not authorize the assessment made against it, that act, in so far as it is pertinent to the matter involved here, being as follows:

"Section 1. In addition to the tax imposed by section five of chapter three of the acts of the legislature of one thousand nine hundred and fifteen, second extraordinary session, every corporation, joint stock company, or association organized for profit, and having a capital stock represented by shares, and every insurance company, respectively,· now or hereafter organized under the laws of this state, or under the laws of any other state or government, and engaged in any business whatsoever in the State of West Virginia, shall pay an annual special excise tax for the privilege of carrying on or doing business in the State of West Virginia equivalent to one-fourth of one per centum upon the entire net income of such company, received by it from· all sources during the year, on business transacted and capital invested in this state, as hereinafter set forth; * * * *"

"Section 2. The tax imposed by section one of this act shall be levied for the state fiscal year one thousand nine hundred and nineteen, and succeeding years, and shall be

computed, levied, assessed, collected and paid upon the same basis and in the same manner as the tax imposed by section five of chapter three of the acts of the legislature of one thousand nine hundred and fifteen, second extraordinary session:

"Section 3. That sections three and four of chapter six of the acts of the legislature of one thousand nine hundred and seventeen, second extraordinary session, be, and the same are hereby repealed."

It will be noticed that this act provides that the tax imposed shall be levied for the fiscal year 1919, and succeeding years. The plaintiff insists that the fiscal year 1919 did not begin until July 1, 1919, and hence the assessment made against it in, June 1919; could not be for the fiscal year 1919, while the tax commissioner's contention is that the fiscal year 1919 was the fiscal year which ended on June 30, 1919, and consequently the assessment sought to be enforced is clearly within the terms of the act. It will thus be seen that the question to be determined is what is meant by the phrase "fiscal year 1919" in the act of the legislature here involved. If it means the year beginning July 1, 1919, admittedly there is no authority for the assessment complained of. If however, it means the fiscal year ending June 30, 1919, the assessment sought to be enjoined is clearly authorized by the act.

By a demurrer to the bill the defendant challenges the jurisdiction of equity to afford any relief in any event, insisting that section 11 of chapter 3 of the Acts of 1915, second extraordinary session, prohibits the granting of an injunction to restrain the collection of such assessments except upon the ground that the same are in violation of the constitution of the State or the United States, were fraudulently made or of a mistake in the amount thereof. We do not think there is merit in this contention. The prohibition against the granting of an injunction only goes to "*taxes imposed*" by the act, while the very contention here is that the act does not impose the taxes the collection of which is sought to enjoin. The claim is that the defendant has levied this assessment without any authority of law and seeks to compel the plaintiff to pay it as a prerequisite to doing business. If it

is determined that the act authorizes the levy of the tax then the injunction was properly refused, but if on the other hand the act only authorizes the' tax for the year beginning July 1, 1919, as contended by the plaintiff,' then it is not imposed by the act, is a void assessment and equity has jurisdiction to enjoin its collection.

Does the legislative act above quoted authorize this assessment? Counsel for the plaintiff cite instances in the past which he contends show that the legislature, by the use of the phrase "fiscal year 1919," meant the fiscal year beginning July 1, 1919, while opposing counsel is as positive that legislative uses of the term which he cites show that it means the fiscal year ending June 30, 1919. The inquiry here is what was meant by the phrase in this particular act. It seems that this phrase has never been definitely defined by the legislature, that is to say, it has never been given a definite and certain signification applicable to it under all circumstances. Here we find the legislature in an extraordinary session incurring certain liabilities, to-wit, the immediate discharge of a considerable part of the Virginia debt, the establishment and maintenance of the department of public safety and increasing the salaries of circuit judges, and making appropriations for each of these purposes. The act in question is one of the means by which the revenue to meet these appropriations is to be raised. The need of the revenue by the terms of the law appropriating it begins on the first day of July, 1919. Why, then, should the legislature pass an act to raise revenue to meet practically immediate needs which would not produce any such revenue for more than a year? Again, the legislature, by the constitutional majority, made this act take effect from its passage, which was on the 31st day of March, 1919. Why did it do this if it was not to operate for a year after its passage? We think this fact strongly argues that the legislature knew these returns of corporations were coming in, were required to be filed by the last day of March and that the tax thereon would be assessed shortly thereafter and by putting this act in effect from its passage the tax commissioner would be required to make the assessment provided by its terms upon the returns then being made by the corpora-

tions subject to an excise tax under the act of 1915. Further, the legislature is making appropriations in 1917 for the year ending June 30, 1918, and June 30, 1919, placed over the columns representing the amounts appropriated for various .purposes the figures 1918 and 1919, respectively, and in the explanatory part of the act stated that the amounts appropriated in the column under the figures 1918 were for the fiscal year ending June 30, 1918, and those under the figures 1919 for the fiscal year ending June 30, 1919, and the same course was pursued in the appropriations made by the legislature in 1919 at the regular session, which was the same body that passed the act under consideration. This consideration of the apparent object of the legislature in the passage of this legislation, together with the above recited recent expressions of legislative understanding as to the meaning of this term convinces us that by it was meant the fiscal year ending June 30, 1919. Any other construction of the act would, in our view, traverse the plain legislative purpose and intent.

We are therefore of opinion to affirm the decree complained of.

*Affirmed*