# CHARLESTON.

PHOENIX INSURANCE COMPANY *v.* F. E. THOMAS *et al.,*

*Trading etc.*

(No. 5878)

Submitted April 26, 1927.   Decided May 3, 1927.

1.   JUDICIAL COGNIZANCE—INSURANCE—CANCELLATION.

Judicial cognizance will be taken of the uniform custom of insurance companies to effect the cancellation of policies through their local agents.   (p. 580).

2. INSURANCE AGENCY—*A Commission to Local Insurance Agency Confers on it General as Well as Certain Specific Authority. Failure to Mention Cancellation Specifically Does Not, Under Rule of Ejusdem Generis Absolve Agency From Duty of Cancelling Policy When Directed by Principal.*

A commission to a local insurance agency confers on it general as well as certain specific authority. Failure to mention cancellation specifically does not, under the rule of *ejusdem generis,* absolve the agency from the duty of cancelling a policy when so directed by the principal. (p. 579).

3. SAME—*It is Duty of Local Insurance Agent, Who Has Been Clothed With General Powers, to Cancel Risk When Directed by Principal to do so. Failure of Agent to Execute With Reasonable Promptness Such Order Renders Him Liable to Principal in Damages. Agent Not Justified in Substituting His Judgment Upon Expediency of Cancelling Risk for That of His Principal. Nor Can He Escape Liability for Failure to Cancel Merely Because Act of Cancellation is Gratuitous.*

It is the duty of a local insurance agent, who has been clothed with general powers, to cancel a risk when directed by his principal to do so. Failure of the agent to execute with reasonable promptness such order renders him liable to the principal in damages. The agent is not justified in substituting his judgment upon the expediency of cancelling the risk for that of his principal. Nor can he escape liability for failure to cancel merely because the act of cancellation is gratuitous. (p. 581).

4. LETTERS—*Copy of Letter is Admissible in Evidence Against Addressee, if It be Shown That Original Was Stamped Properly Addressed, Duly Delivered for Transmission Through Mails.*

A copy of a letter is admissible in evidence against the addressee, if it be shown that the original was stamped, properly addressed, and duly delivered for transmission through the mails. (p. 579).

Error to Circuit Court, Wetzel County.

Action by Phoenix Insurance Company against F. E. Thomas and others. Judgment for defendant. Plaintiff brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Larrick & Lemon,* for plaintiff in error.
*Willis & Ball,* for defendant in error.

HATCHER, PRESIDENT:

This action was brought to recover $4250.00 paid by plaintiff on a fire insurance policy which it had instructed defendants, its local agents, to cancel, but which they had failed to do.

On Oct. 13, 1924, the defendants executed policy No. 2762, in the amount of $5000.00, on the property of Samuel Kamins. Notice of the issuance of this policy was received by the plaintiff on Oct. 16, and on Oct. 17, it wired the defendants: "Please cancel Kamins policy two seven six two." F. C. Gustetter, secretary of the plaintiff testified that he mailed a letter on Oct. 17 to the defendants confirming the telegram. F. E. Thomas, who managed the business for defendants, testified that he did not receive that letter, but admitted receiving the telegram. The defendants did not comply with the telegram. According to Thomas, he mailed a letter to the plaintiff on Oct. 23, which stated that he had investigated Kamins, and found him "O. K." The letter concluded as follows: "I have not complied with your telegram, but after you receive this information, if you insist will cancel policy. Would appreciate it very much if you will carry this risk for a while, until he disposes of part of his stock, and I will cancel it." Gustetter testified that the letter of Oct. 23 was never received by the plaintiff.

The defendants mailed a report of their Oct. business to the plaintiff, which it received on Nov. 6. This report listed the Kamins policy. On Nov. 10, the plaintiff wrote the defendants as follows: "As yet our records would show we have not received the above cancelled contract in accordance with our letter of October 17, 1924, confirming telegram of same date. Presumably you have done the needful in the way of retiring the liability and thanking you for the canceled policy to be sent us via the Stamping office channels, remain," This letter presumably arrived at New Martinsville Nov. 13. Thomas testified that he was out of town, and

did not receive the letter until Nov. 15. He took no steps to cancel the policy on Nov. 15. That night the Kamins property burned. On Nov. 15, the plaintiff sent defendants a letter, not received until after the fire, which is as follows: "We are in receipt of your October account, showing a balance due Company of $95.12, and on auditing same, we find you charge 25% commission on policy No. 2762 and also 12c for postage. Recently we sent you a bulletin relative to the flat commission rate of 20% on all risks effective on and after October 1st, except Riot and Civil Commotion and Explosion, which is 15% and under this compensation and its includes the exchange and postage items. In view of the above remarks, we have changed your account and the balance now reads $96.24 instead of $95.12 due us, so kindly remit accordingly when due."

At a conference after the fire, between Kamins, Thomas and the adjuster for the plaintiff, the loss under the policy was compromised at $4250.00, which the plaintiff paid.

Two instructions were given by the court on behalf of the defendants, which are as follows:

No. 2.

"The Court instructs the jury that if you believe from the evidence in this case that the plaintiff, The Phoenix Insurance Co., failed and neglected to answer the letter of F. E. Thomas, dated Oct. 23rd, relative to the Samuel Kamins policy, or failed to act after receiving the monthly report of the said Thomas Insurance Co. for the month of Oct., 1924, showing that said policy had not been cancelled, and if you further believe that by the failure to so act or answer said letter, the defendants had reasonable ground to believe and did believe that the plaintiff had waived or suspended its directions to cancel said policy of insurance, then you should find for the defendants."

No. 3.

"The jury are instructed that if they believe from the evidence that on the 23rd day of Oct. 1924, the defendants wrote the plaintiff, giving it information as to Samuel Kamins risk, and stating

that if it insisted upon it the agency would cancel the policy and asking the plaintiff to carry the policy for a while; and if you further believe that the defendants sent in reports to the plaintiff between that date and Nov. 15, 1924, showing that the defendants had charged themselves with the full premium for one year on said policy and showing no deduction or credit asked by them for the return premium if cancelled; and if you further believe that on Nov. 15, 1924, the plaintiff wrote the defendant correcting the October account but saying nothing as to the Kamins premium, then you may consider this evidence in connection with all other evidence in the case upon the question of good faith of said agents and if from all of the evidence in this case you believe that the defendants acted in good faith in the premises and with reasonable and due care and regard for the interests of the plaintiff, and had reasonable ground to believe and did believe that the plaintiff had waived or suspended its directions to cancel said policy, then the defendants are excusable for not giving notice of cancellation, and you should find for the defendants.''

Instruction No. 2 contains three errors. (1) The evidence of Gustetter is that the plaintiff did not receive the letter of Oct. 23; yet the instruction proceeds on the theory that the plaintiff did receive it. (2) The report for Oct. was received by the plaintiff on Nov. 6, and on Nov. 10 the plaintiff again demanded a cancellation of Kamins' policy. This demand is admitted. Yet the instruction submits to the jury whether, after receiving that report, the plaintiff "failed to act." (3) Thomas makes no claim that he had "reasonable ground to believe and did believe that the plaintiff had waived or suspended its directions to cancel." He testified that his only reasons for not cancelling the policy were that he thought the company was mistaken as to the Kamins hazard, and that he considered it a safe risk and acted on his own judgment. The letter of Nov. 15, upon which counsel base the contention of waiver, not having been received by Thomas until after the fire, could of course have nothing to do with his conduct before the fire.

For the same reason it was improper to submit to the jury, as was done in Instruction No. 3, the questions of defendants' good faith, their belief that the plaintiff had waived cancellation, and justification of their conduct, so far as same were based on the letter of Nov. 15.

Six instructions were given the jury on behalf of the plaintiff. Its instructions 3, 7, 8 and 9 were refused. 3 and 7 referred to matters sufficiently covered by the six given. It was therefore not error to refuse them. Both 8 and 9 demanded that the evidence should preponderantly show that plaintiff received the letter of Oct. 23, before the jury could consider it. Those instructions were rightly rejected, as a copy of a letter is admissible against the addressee if it be shown that the original was duly delivered for transmission through the mails to him. 22 C. J. p. 909, Sec. 1112, Jones on Ev. Civil Cases, par. 52.

The commission from plaintiff appointing defendants its agents, authorized them to receive proposals for and make policies of insurance by countersigning same, to renew policies and assent to assignments and transfers thereof, "and to do all matters and things pertaining to said appointment that shall be given them in charge by said company."

Because the commission does not mention specifically the cancellation of policies, counsel contend that under the rule of *ejusdem generis,* cancellation could not be required of defendants. The rule of *ejusdem generis* may be invoked where there is doubt as to the intention of the parties. Elliot on Contracts, Sec. 1532. Here no such doubt arises. It is well settled that where the powers above mentioned are delegated to an agent, he becomes a general agent of his principal within his territory. *Machine Co.* v. *Ins. Co.,* 50 O. St. 549 (558) ; *West* v. *Ins. Co.,* 10 Utah 442 (448) ; 32 C. J. 1065, Sec. 142. Story says that whatever acts are usually performed by a class of agents, are deemed to be incidents of the agency; and that whenever those acts are well known "in the common negotiations of commerce, and by frequent recognitions of Courts of justice", they become matters of legal intendment and inference and are not open for controversy.

Story Law of Agency, Sec. 106.   It is a matter of common knowledge among well informed business men, that agents of the class to which defendants belong usually assume charge of the cancellation of fire insurance policies.   Thàt custom is well known in the legal world.   "The power of an insurance agent to fix rates of premium, to give consent to the increase of risks and change of occupation of buildings insured, to cancel policies on account of increase of risks, and to exercise supervision over the property covered by policies issued at his agency, etc., are necessary incidents of his general authority to effect contracts of insurance, to conduct the business at his agency, and to do all things necessary and proper in the prosecution thereof—all of which he has implied authority to do, subject, of course, to limitations imposed by his principals and known to those with whom he deals." *Viele* v. *Germania Ins. Co.* (Iowa) 96 Am. Dec. 85.   Judicial cognizance will be taken of a custom of such general notoriety. *Taylor* v. *Grand Lodge*, 101 Minn. 72; 11 L. R. A. (N. S.), 92; 11 Ann. Cases 260; 23 C. J. p. 73, Sec. 1838, p. 76, Sec. 1538. If any doubt could arise as to the duty of defendants under their commission, to cancel the Kamins policy, it is resolved by the acts of the parties.   The plaintiff included cancellation as one of the matters pertaining to the agency, which it might give the defendants in charge.   The letter of Oct. 23, shows that the defendants accepted cancellation as an incident of their agency.

Counsel say that even if it was the duty of defendants to cancel the Kamins policy, the cancellation would have been gratuitous, and failure to cancel imposed no liability upon them.   The authorities do not sustain that contention.   Duty is the offspring of obligation.   Obligation may exist without compensation, where one has undertaken to perform a service.   Here, the agency of defendants entailed on them the cancellation of policies.   They had accepted that agency. Therefore, they had undertaken to perform that very act, and cannot escape liability for failure in that respect because the act was gratuitous.   Mechem on Agency, 2nd Ed., Secs. 1244 and 1258.   "It is the duty of the principal's agent, when

ordered peremptorily to cancel a risk, to exercise reasonable diligence to execute the order." Joyce on Ins. Sec. 666; 32 C. J., p. 1070, Sec. 148.

Not only is it the duty of an agent to cancel a risk when so directed by his principal, but his failure to do so makes him liable to the principal for the damages sustained, unless absolved by some valid reason. *Ins. Co.* v. *Bigger,* 102 Kan. 53; *Ins. Co.* v. *Banks* (N. D.), 22 L. R. A. (N. S.), 509; Joyce, *supra;* 32 C. J. p. 1073, Sec. 151. If the agent pursues his own judgment in such case he does so at his peril. "An agent has no legal right to sit in judgment upon the wisdom or expediency of the instructions of his principal, and his failure to execute them with reasonable promptness and fidelity will render him liable to his principal in damages." *Kraber* v. *Union Ins. Co.,* 129 Pa. St. 8.

Counsel further contend that by the letter of Nov. 15, the plaintiff waived its request to cancel, relying on the case of *Ins. Co.* v. *Haggerty,* 92 Hun. 26, 36 N. Y. Supp. 558. In that case the insurance company wrote Haggerty, who was its agent, on July 9, 1891, asking him to cancel a certain policy. On July 13, Haggerty replied, stating that he considered the risk a 'good one, and recommending that the policy be continued. On July 16, and again on July 31, letters were written Haggerty by the company requesting return of the policy. The requests were ignored. In Aug. the company drew on Haggerty for balance due. The premium on the policy in question was included in the draft. The draft was paid. That premium was never returned to Haggerty. A loss occurred on the policy in Mar. 1892. Monthly reports had been forwarded the company by Haggerty for each of the seven months from July 1891 to Mar. 1892, showing what policies were cancelled. Because the company could see from those reports that the policy in question had not been cancelled, because it knowingly retained the premium on the objectionable policy, and because it made no attempt after July 1891 to have it cancelled, the court held that "a fair question of fact was presented for the consideration of the jury as to whether the plaintiff by reason of the circumstances disclosed,

waived its request to have the policy cancelled." That case was later submitted to the court in lieu of a jury and the court found in favor of Haggerty. See 45 N. Y. Supp. 617. The facts in that case are so different from those here, that we are not warranted in taking the conclusion there as a guide here.

Because of the errors assigned, the judgment of the lower court will be reversed, the verdict of the jury set aside, and a new trial awarded the plaintiff.

*Judgment reversed; verdict set aside; new trial awarded.*