SANITARY MILK AND ICE CREAM COMPANY *v.* PEARL T. HICKMAN *et al.*

(No. 8631)

Submitted September 21, 1937. Decided November 2, 1937.

*Clarence W. Meadows,* Attorney General, *Ira J. Partlow,* Assistant Attorney General, and *J. V. Sanders,*

for appellants.

*George R. Farmer,* for appellee.

MAXWELL, JUDGE:

This is an appeal from a decree of the circuit court of Monongalia County enjoining the sheriff of that county and the state tax commissioner from enforcing against the plaintiff an assessment for gross sales tax on the plaintiff's business for the calendar year of 1935.

The plaintiff, claiming exemption from such tax, declined to make a report of its gross sales for the year stated. The tax commissioner, believing that the plaintiff was not exempt from the tax, laid an assessment of $816.50 against the plaintiff, based on such information as was available to the commissioner, and forwarded the assessment to the sheriff of Monongalia County with instructions to make collection. In pursuance of such authorization, the sheriff levied on certain personal property belonging to the plaintiff. Further proceedings by the officials were inhibited by the decree aforesaid.

The tax commissioner challenges the right of the plaintiff to prosecute the suit in Monongalia County, the insistance being that, inasmuch as the suit is against a state official, it can be prosecuted only in the county wherein is located the seat of government of the state. This contention is based on Code, 14-2-4, which provides that suits against the governor, attorney general, treasurer, auditor, board of public works or other public corporation, composed of officers of government, having custody of funds or property of which the state is sole owner, shall be brought and prosecuted in the circuit court of the county in which the seat of government is located. This statute was discussed in the case of *Davis* v. *West Virginia Bridge Commission,* 113 W. Va. 110, 166 S. E. 819. A majority of the court was of opinion that the statute applied to the Bridge Commission because it was a governmental corporation controlling state property and funds. We do not think, however, that the terms of the statute are broad enough to include the state tax commissioner. He is not one of the officials

specifically named in the statute, nor is the general language thereof broad enough to include him. We therefore reach the conclusion that the contention that this suit may not be prosecuted in a county other than that in which the seat of government is located is not well taken.

The state imposes a privilege tax, generally referred to as a gross sales tax, upon "every person engaging or continuing within this State in the business of selling any tangible property whatsoever, real or personal, * * * except sales by any person engaging or continuing in the business of horticulture, agriculture or grazing, or of selling stock, bonds or other evidences of indebtedness. * * *." Code, 11-13-2c. There is a further provision of the act that the tax shall not be applicable to "societies, organizations and associations organized and operated for the exclusive benefit of their members and not for profit." Code, 11-13-3.

The pointed inquiry on this appeal is whether the plaintiff comes within either of the quoted exceptions.

The plaintiff is a co-operative association organized under the provisions of Article 4, of Chapter 19 of the Code. A charter of incorporation was issued to the plaintiff by the secretary of state in September, 1934.

Two provisions of the co-operative associations enactment must be specially noted at this point.

The first of these two provisions reads: "Such association shall be deemed non-profit." Code, 19-4-1c. The verb "to deem" is ordinarily defined to mean "to think", "to suppose", "to opine". Therefore, the last quoted language carries the meaning that such association does not beyond peradventure have the standing of a non-profit organization, but that it shall have that *prima facie rating*. On the record before us it would seem that the plaintiff's *prima facie* status of being a non-profit association is probably overcome by the facts, in this, that through the processing of dairy products and the marketing of commodities produced therefrom, the association operates primarily for the purpose of deriving for its members a greater return than they could obtain from the raw products.

The second indicated provision of the co-operative associations act reads: "Any exemptions whatsoever under any and all existing laws applying to agricultural products in the possession or under the control of the individual producer shall apply similarly and completely to such products *delivered by its former members*, in the possession or under the control of the association." Code, 19-4-20. This provision is somewhat confusing in its phraseology, as the italicization which we have supplied indicates. There seems, however, no doubt that the legislative intent manifested in that section is to give to the individual producer who enters into a pool or association for the marketing of his products the same benefit of statutory exemption as though he had stood aloof from the organization and had continued to operate individually. In respect of tax exemptions, such an association, operating merely as a marketing instrumentality, being in effect a group of producers of farm products, stands on the same footing as an individual producer of such products. But does such exemption extend to commodities which are processed from farm products?

By its charter the plaintiff is granted broad powers for the conducting of a business grounded on dairy products, including the processing thereof and the buying and selling of dairy supplies, equipment and machinery, and the doing of things necessary and incident to the operation of such business. The association is authorized to issue fifty shares of common stock at the par value of $100.00 per share, and 750 shares of preferred stock at the par value of $100.00 per share; the common stockholders of the association shall be its members; the common stock may be owned only by producers of dairy products; a holder of common stock shall be entitled to only one vote, regardless of the number of shares held by him; there may be paid on common stock non-cumulative dividends not to exceed 8 per centum per annum; preferred stock shall be entitled to cumulative dividends of 6 per centum per annum; before the paying of dividends, reasonable reserves, as determined by the board of directors, may be set aside, and "the balance of the

undistributed returns of the association shall be distributed to all producer patrons on a patronage basis."

The scope of the authorized business of the plaintiff transcends by far the marketing of farm products as such. Though not at present exercising its full corporate authority, it is "engaged in the manufacturing and processing and selling of dairy products produced by its stockholders and others." If, through a co-operative association, a group of milk producers, without paying a privilege tax, may operate an ice cream or cheese factory, why may not producers of beef operate in like manner an abattoir, producers of wheat a flour mill, and producers of lumber a furniture factory?

In support of the position which it seeks to maintain herein, the plaintiff relies strongly on the case of *Yakima Fruit Growers' Association* v. *Henneford,* 182 Wash. 437, 47 P. (2d) 831, 100 A. L. R. 435. There, an incorporated co-operative association engaged in the marketing of fruit produced by its members was allowed the same benefit of statutory exemptions as would have been enjoyed by the individuals if they had directly marketed their fruit. A sound decision, but, note, there was no processing which changed the product into a different commodity. We think that the Washington case, rather than affording support for the plaintiff's position, illustrates the narrow limits within which such association may claim the exemptions which individual producers may claim.

We are of opinion that under the last quoted provision of the co-operative associations statute (Code, 19-4-20), the plaintiff, as an incorporated association of individual producers of dairy products, would be entitled to exemption from the gross sales tax the same as an individual would be entitled under the quoted exemption (Code, 11-13-2c), but that the association is conducting a business of wide scope, beyond the mere marketing of farm products, and therefore Code, 19-4-20 is not applicable.

It thus appearing that neither of the pertinent provisions of the co-operative associations act entitles the plaintiff to the benefit of the agriculture exemption of the

356

gross sales act, it follows that we disapprove the chancellor's decree.

*Reversed.*