ANDREW E. DOUGLASS, *etc., et al.*

*v.*

C. H. KOONTZ, *State Tax Commissioner, etc.*

(CC 788)

Submitted April 22, 1952.  Decided June 24, 1952.

Fox, Judge, not participating.

*Boreman & Stealey, H. S. Boreman, R. E. Stealey,* for plaintiffs.

*Chauncey Browning,* Attorney General, *Joseph E. Hodgson,* Assistant Attorney General, *King S. Kearns,* for defendant.

Riley, President:

In this certified case, Andrew E. Douglass, doing business as Chancellor Insurance Agency, who sues on behalf of himself and all other duly licensed fire and casualty insurance agents, doing business in the State of West Virginia, who are similarly situated, instituted this proceeding in the Circuit Court of Kanawha County against C. H. Koontz, State Tax Commissioner of West Virginia, for

the purpose of obtaining a declaratory judgment determining whether the plaintiff is engaged in a "service business or calling" within the meaning of the Business and Occupation Tax, Code, 11-13-1, as amended, and thereby subject to the one per cent tax imposed by Section 2h of said Chapter 11, Article 13, incorporated in the Official Code by Chapter 86, Acts of the Legislature, Regular Session, 1935.

The pertinent provisions of Chapter 11, Article 13, as amended, are as follows:

Section 1: "'Service business or calling' shall include all nonprofessional activities engaged in for other persons for a consideration, which involve the rendering of a service as distinguished from the production or sale of tangible property, but shall not include the services rendered by an employee to his employer.

\* \* \*

Section 2h: "Upon every person engaging or continuing within this State in any service business or calling not otherwise specifically taxed under this law, there is likewise hereby levied and shall be collected a tax equal to one per cent of the gross income of any such business."

From the petition it appears that plaintiff has entered into agreements with certain listed insurance companies, each captioned "AGENCY AGREEMENT", in which plaintiff is designated as "the Agent", and in which he is authorized to represent the listed insurance company in the solicitation and issuance of policies of insurance (other than life insurance) and contracts for indemnity bonds. These agreements are of two general types: (1) Those under which plaintiff writes policies of fire insurance; and (2) those under which plaintiff writes other forms of insurance, generally casualty and indemnity contracts. Under the fire insurance agreements plaintiff is authorized to "receive and accept proposals for insurance covering such classes of risks as the company may authorize to be insured." Under the second type of contract plaintiff's authority is limited to the solicitation and submission of applications for insurance to the insurance company.

Under these agency agreements with the various listed insurance companies, plaintiff's sole remuneration consists of a designated commission retained by him from premiums on policies of insurance and indemnity bonds, which he may write in the listed insurance companies.

The petition alleges that under his trade name, "Chancellor Insurance Agency", plaintiff solicits the public generally to purchase through him policies of insurance (other than life insurance) and indemnity bonds. Sometimes plaintiff advises his clients, or prospective clients, as to their need for insurance or indemnity bonds; and after loss the plaintiff may on occasion aid his clients in securing adjustments, though he does not act as an insurance adjuster. For these services he receives no compensation, his sole income being from commissions on the premiums for policies of insurance and indemnity bonds which he writes.

Upon receipt of an order for insurance or an indemnity bond plaintiff is free either to accept or reject the same and to issue the policy of insurance or indemnity bond in any one of the companies with which he has an agency agreement. Plaintiff is wont to countersign and deliver the policies, notifying his principal thereof, and, when he collects, he remits the amount of the premium, less his commission, to his principal. The agency agreements provide that the amount of money due to the principal named in each agreement on the business placed by him with the principal are to be rendered monthly, so as to reach the latter's office not later than the tenth day of the following month, and the balance therein shown to be due to his principal shall be paid not later than sixty days after the end of the month for which the account is rendered.

Under these agency agreements plaintiff is obligated to pay the premiums on insurance policies and indemnity bonds which he writes, regardless of whether he collects for them.

The petition alleges that the companies with which plaintiff has the agency agreements have no right to exer-

cise any control over his solicitation of business or the placing of business secured by him as the result of such solicitation; and that plaintiff accepts orders by writing the policy on a form supplied by the insurance company, in which he has elected to place the insurance, countersigning it himself, as agent for the company, and delivering it to his client.

The agency agreements, copies of which are filed with the petition as exhibits, as the petition alleges, authorize the plaintiff in selling and writing insurance to act as the agent of the company for whose account he may issue the policy, and not as the agent of his client, who later becomes the insured.

Plaintiff alleges in his petition that he is engaged in the business of selling, for a commission, intangibles, choses in action in the nature of contracts to protect the insured in the event of possible loss. On this basis plaintiff asserts that he is not engaged in a "service business or calling" within the meaning of Sections 1 and 2h of Chapter 11, Article 13, as amended, of the Code of West Virginia, (the Business and Occupation Tax), and, therefore, is not subject to the tax equalling one per cent of the gross income of plaintiff's business, which it is alleged the defendant, C. H. Koontz, tax commissioner as aforesaid, is attempting to collect.

The defendant filed a demurrer to plaintiff's petition, setting up two grounds:

"1. The business activities of the plaintiff as set forth by the allegations in his petition do not legally constitute engaging in the business of selling intangible personal property.

"2. The business activities of the plaintiff as set forth by the allegations in his petition legally constitute a service, business or calling as defined in Section 1, Article 13, Chapter 11 of the Official Code of West Virginia of 1931, as amended, and thus subject him to the imposition of the Business and Occupation Tax as provided by said Article 13, Chapter 11, of the said Code, and more particularly Section 2h thereof."

The circuit court sustained the first ground of demurrer, relating to the sale of intangibles, and overruled the second ground of demurrer that the plaintiff's activities, as set forth in the allegations of his petition, legally constitute a "service business or calling", as provided in Code, 11-13-1, as amended. This ruling of the circuit court being decisive of the case, the court overruled defendant's demurrer to the petition and certified its ruling to this Court. The only certified question is:

"Do the business activities of the plaintiff as set forth by the allegations in his petition legally constitute a service business or calling as defined in Section 1, Article 13, Chapter 11 of the Code of West Virginia, as amended, and thus subject him to the imposition of the Business and Occupation Tax as provided by said Article 13, Chapter 11 of the Code, and more particularly Section 2h?"

After this case had been argued and submitted the question arose in the minds of some of the members of this Court whether this proceeding may be prosecuted against the defendant tax commissioner, notwithstanding the provision of West Virginia Constitution, Article VI, Section 35, which provides, in part, that: "The State of West Virginia shall never be made defendant in any court of law or equity, * * *." The Court desiring that counsel be heard on this question on its own motion set the case down for hearing on Tuesday, June 3, 1952, on which date the case was again submitted to the Court on arguments and briefs bearing on the jurisdictional question.

There are three main issues: (1) Is this proceeding barred under the provisions of West Virginia Constitution, Article VI, Section 35; (2) is plaintiff engaged in a "service business or calling", as these words are used in Code, 11-13-1, as amended, and therefore subject to the one per cent tax imposed by Section 2h of the said statute; and (3) do Code, 33-2-37, as amended, which provides for payment by insurance companies of a tax of two per cent of their gross premiums, and Code, 11-13, as amended, which provides for a tax of one per cent of the gross income of

one engaged in a business service or calling, constitute double taxation within the inhibitory provision of West Virginia Constitution, Article X, Section 1?

The question whether this proceeding comes within the inhibitory provisions of West Virginia Constitution, Article VI, Section 35, is narrow, and may be tersely stated as follows: Can a declaratory judgment suit be maintained against the state tax commissioner, where, as in the instant proceeding, the petition does not seek to obtain money or other property belonging to the State, or to control the discretion of an official or to compel the State, or an official thereof, to execute a contract on behalf of the State, but simply alleges that the statute does not apply to the taxpayer and asks for a declaratory judgment bearing directly and solely on that issue.

This narrow jurisdictional question has never been expressly decided by this Court, though in the recent case of *American Barge Line Co.* v. *Koontz,* 136 W. Va. 747, 68 S. E. 2d 56, which is exactly in point with the instant case, in that it was a proceeding for a declaratory judgment brought by the American Barge Line Company against C. H. Koontz, individually and as State Tax Commissioner of West Virginia, the Court took jurisdiction of the case. The question whether a declaratory judgment proceeding involved in that case was violative of West Virginia Constitution, Article VI, Section 35, was not considered and specifically decided.

This case is to be distinguished from the recent case of *Hamill* v. *Koontz,* 134 W. Va. 439, 59 S. E. 2d 879, which involved a notice of motion for judgment proceeding, in which plaintiff sought to recover from the defendant tax commissioner taxes alleged to have been erroneously paid. Likewise this case is to be distinguished from *Miller* v. *State Board of Agriculture,* 46 W. Va. 192, 32 S. E. 1007, in which the petitioner sought a writ of mandamus to compel the performance of a printing contract; *Miller Supply Co.* v. *State Board of Control,* 72 W. Va. 524, 78 S. E. 672, in which plaintiff sought to maintain an action at law

to recover compensation for supplies furnished a state institution; *State ex rel. Gordon* v. *State Board of Control,* 85 W. Va. 739, 102 S. E. 688, in which the petitioner sought a writ of mandamus to require the board of control to furnish convicts for work in a factory, pursuant to a contract; *Barber* v. *Spencer State Hospital,* 95 W. Va. 463, 121 S. E. 497, and *Mahone* v. *State Road Commission,* 99 W. Va. 397, 129 S. E. 320, which involved actions at law to recover damages for torts; *Stewart* v. *State Road Commission,* 117 W. Va. 352, 185 S. E. 567, in which plaintiff sought to obtain a writ of mandamus to compel the payment of a judgment which he had theretofore obtained against the state road commission; *Watts* v. *State Road Commission,* 117 W. Va. 398, 185 S. E. 570, in which plaintiff sought to recover a money judgment against the State in an action of assumpsit on a contract; and *Schippa* v. *West Virginia Liquor Control Commission,* 132 W. Va. 51, 53 S. E. 2d 609, 9 A. L. R. 2d 1284, which was an action at law to recover from the liquor control commission money which the plaintiff had paid for liquor which was not delivered. These cases are readily distinguishable, because in each it is sought to recover money or property belonging to the State or to compel the performance of a contract with the State.

More nearly in point with the instant case on the jurisdictional question are those cases arising in this jursdiction, in which the plaintiff seeks to enjoin in a court of equity the collection of a tax without authority of law. In *Turkey Knob Coal Co.* v. *Hallanan, State Tax Commissioner,* 84 W. Va. 402, pt. 1 syl., 99 S. E. 849, this Court held that: "Equity has jurisdiction at the suit of a party affected thereby to enjoin the collection of a tax levied without authority of law"; and in numerous other cases arising in this jurisdiction, in which the immediate jurisdictional question was not discussed, this Court entertained bills for injunctions to restrain the allegedly wrongful collection of taxes. *Eureka Pipe Line Co.* v. *Hallanan, United Fuel Gas Co.* v. *Hallanan,* 87 W. Va. 396, 105 S. E. 506, reversed in 257 U. S. 265, 42 S. Ct. 101, 66 L. ed. 227;

*Hope Natural Gas Co.* v. *Hall, State Tax Commissioner of West Virginia,* 102 W. Va. 272, 135 S. E. 582, affirmed in 274 U. S. 284, 47 S. Ct. 639, 71 L. ed. 1049; *Central Trust Co., Trustee* v. *Hall, State Tax Commissioner,* 106 W. Va. 687, 146 S. E. 825; *Laing* v. *Fox, State Tax Commissioner,* 115 W. Va. 272, 175 S. E. 354; *Sanitary Milk and Ice Cream Co.* v. *Hickman, Sheriff, Fox, State Tax Commissioner, et al.,* 119 W. Va. 351, 193 S. E. 553; *Harper, Executrix, etc.* v. *Alderson, State Tax Commissioner,* 126 W. Va. 707, 30 S. E. 2d 521; *Arslain, doing business as Odorless Dry Cleaning Co.* v. *Alderson, State Tax Commissioner,* 126 W. Va. 880, 30 S. E. 2d 533.

The rationale of these equity cases is that the suits are against the tax officials, as individuals, rather than as officers of the State. This Court in the well-considered case of *Coal & Coke Railway Co.* v. *Conley and Avis,* 67 W. Va. 129, 142, 143, 144, 67 S. E. 613, in an opinion written by Judge Poffenbarger, drew the distinction between the government of the State of West Virginia, its officers and representatives and the State itself, saying at pages 143 and 144: "The government of a state is its mere agent and all its officers act in a representative capacity, binding the state by their acts only in those instances in which they have authority to act for her. The law under which they act constitutes their power of attorney, or warrant of authority, and when, for any reason, that law is void, the act, done under it, is likewise void and amounts to a wrong and a trespass. As in such case, the state cannot be deemed to have authorized the wrongful act, the person who did it, although an officer in name, is deemed to have acted in his individual capacity."

The principle which has prompted this Court in holding that a court of equity has jurisdiction to restrain a tax official or other official from illegal and unwarranted acts under the cloak of his official authority, which are injurious to a plaintiff where a suit was brought for no other purpose, applies with equal or greater force to this proceeding. As heretofore indicated, this proceeding has as its only purpose the obtaining of a judgment declaring

whether Code, 11-13-1, as amended, and 11-13-2h, apply to the instant taxpayer. It has been said by an eminent authority that, "A well known field of jurisdiction under the Declaratory Judgment law is the adjudication of legal rights in controversy between the citizen on one hand and public officials on the other, including members of administrative agencies, boards and commissions, in advance of threatened and erroneous action to the injury of the citizen." 1 Anderson, Declaratory Judgments, Section 179, pages 352-353.

In *Curry* v. *Woodstock Slag Corporation*, 242 Ala. 379, 66 So. 2d 479, the Supreme Court of Alabama held that a suit under the declaratory judgment statute, brought for the purpose of preventing state officers from making erroneous mistakes through an honest interpretation of law, is not a "suit against the state" prohibited by the Alabama Constitution, which, like West Virginia Constitution, Article VI, Section 35, prohibits the State from being made a defendant in any court of law or equity. At page 381 of the opinion that Court said: "Considering the true nature of a suit which is declaratory of controversial rights and · seeks no other relief, but only prays for guidance both to complainant and the State officers trying to enforce the law so as to prevent them from making injurious mistakes through an honest interpretation of the law, and thereby control the individual conduct of the parties, albeit some of them may be acting for the State, it is our opinion that a suit between such parties for such relief alone does not violate section 14 of the Constitution." To like effect see *Berlowitz* v. *Roach*, 252 Wis. 61, 30 N. W. 2d 256, and *Cobb* v. *Harrington*, 144 Tex. 360, 190 S. W. 2d 709, 172 A. L. R. 837. For an excellent collation of authorities bearing on the immediate question, see annotation to *Boeing Airplane Co.* v. *Board of County Commissioners of Sedgwick County*, 164 Kan. 149, 188 P. 2d 429, 11 A. L. R. 2d 350, at pages 380 and 381.

As the instant suit seeks only a declaration whether the taxing statute is applicable to the instant plaintiff, and the petition does not seek to control the discretion of the

defendant, C. H. Koontz, Tax Commissioner of the State of West Virginia, or to affect any proprietary rights of the State, or any of its governmental arms, we are of opinion that this proceeding does not violate the inhibitory provisions of West Virginia Constitution, Article VI, Section 35, but, on the contrary, aptly lends itself to a determination of the instant controversy between the plaintiff taxpayer and the defendant tax commissioner and gives judicial guidance to the taxpayer as to his tax liability, if any, and guidance to the defendant official as to his right to impose and collect the tax in controversy.

In overruling the defendant's demurrer to the petition, the circuit court, in effect, held that plaintiff's business activities, as set forth in the petition and the exhibits filed therewith, do not constitute a service business or calling, as defined by Code, 11-13-1, as amended; and that the plaintiff taxpayer is not subject to the Business and Occupation Tax provided by Code, 11-13-2h.

The basic question under consideration is whether plaintiff's activities under the agency agreements constitute a service business or calling within the meaning of Code, 11-13, as amended. Plaintiff alleges in his petition that he is "* * * engaged in the business of selling, for a commission, intangibles, choses in action in the nature of contracts to protect insureds in the event of possible loss." On the basis of this allegation plaintiff contends that he is not engaged in "a service business or calling". This allegation, however, only sets forth a conclusion of law, and leaves open for consideration the factual allegations of the petition concerning plaintiff's activities, and his relation to the listed insurance companies and to insureds and prospective insureds.

As a demurrer admits only the well-pleaded allegations of the pleadings, *Fahey* v. *Brennan*, 137 W. Va. 37, 70 S. E. 2d 438, we are not permitted in the interpretation of the statute and its applicability to plaintiff to take as correct the proposition of law stated in plaintiff's petition, which,

in truth and in fact, begs the question of statutory construction now before us.

The petition alleges that plaintiff has been duly licensed by the insurance Commissioner of West Virginia, as the resident agent of the listed companies, with general powers to solicit, procure and counter-sign policies of insurance and contracts for indemnity bonds for the insurance companies with which he holds agency agreements. This allegation of the petition should be read in the light of Code, 33-7-1 and 13. Section 1 provides that the licenses issued by the insurance commissioner are for "the solicitation or procurement of applications for, or policies of, insurance for any [insurance] company referred to in this chapter"; and Section 13 provides that any person who shall solicit an application for insurance shall "in any controversy between the assured or his beneficiary and the company issuing any policy upon such application," be regarded as the agent of the company and not the agent of the insured. So from the petition it clearly appears that, though plaintiff was at liberty to select one or more of the insurance companies with which he had agency agreements, he acted as the duly licensed agent of any of the listed companies, which entered into contracts of insurance and indemnity bonds as the result of his solicitations. While the petition alleges that plaintiff assisted the insured or prospective insured, through advice before loss and in the adjustment of claims after loss, these were gratuitous services rendered for the purpose of maintaining plaintiff's good will, and in that regard he was not acting either as an adjuster or as an agent of the insured.

The duties which the plaintiff owes to the insurance companies which he represents as agent under the agency agreements and applicable law, bear directly on the question whether plaintiff was engaged in the sale of policies of insurance and contracts for indemnity bonds. In consideration of certain specified commissions plaintiff served the listed insurance companies in procuring members of the public to take insurance or enter into contracts for indemnity bonds with the listed companies. He was re-

quired to collect and pay to the insurance company or companies entitled thereto the premiums, after deducting his commissions. And as the local agent of the listed insurance companies, clothed with general powers, plaintiff was under the duty to cancel policies of insurance at the direction of any company or companies having the right of cancellation; and his failure to execute such direction would render him liable in damages to the company or companies which gave the order to cancel. 10 M. J., Insurance, Section 8; 29 Am Jur., Insurance, Section 105; *Phoenix Insurance Co.* v. *Thomas,* 103 W. Va. 574, pts. 2, 3, and 4, syl., 138 S. E. 381; and the fact that the instant agency agreements fail to mention cancellation specifically "does not, under the rule of *ejusdem generis,* absolve the agency from the duty of cancelling a policy when so directed by the principal." Pt. 2 syl., *Phoenix Insurance Co.* v. *Thomas, supra.*

In the consideration of the question whether, as plaintiff alleges, he is "engaged in the business of selling, for a commission, intangibles, choses in action in the nature of contracts", let us for a moment consider the nature of a policy of insurance. Essentially, a policy of insurance is that of indemnity to the insured. 29 Am. Jur., Insurance, Section 3. The policy itself is a contract or agreement by which the insurance company, and not the insurance agent, agrees for a consideration to pay money or perform some act of value to the insured, in case of death or loss or damage from certain perils specified in the policy.

Thus, as the contract is between the insurance company, as the insurer, and the insured, the agent is selling neither intangible property nor a chose in action in the nature of a contract. When a policy is issued by the insurance company as a result of plaintiff's solicitation, the insurance company agrees thereby to indemnify the insured in consideration of stated premiums, and the agent simply represents the company or companies selected by him in the solicitation of prospective insured or insureds; and only when a loss occurs, which is compensable under the policy, does the insured have a chose in action in the strict sense

of the term against the insurer. Then the insured looks to the insurer for indemnity, and the agent has no further duties under the agency agreement or agreements.

In support of plaintiff's position that "no aspect of an insurance company has ever been construed a service business", plaintiff cites the case of *United States* v. *South-Eastern Underwriters Assn.*, 322 U. S. 533, 88 L. ed. 1440, and 64 S. Ct. 1162, in which the majority opinion stated, "The modern insurance business holds a commanding position in the trade and commerce of our nation. Built upon the *sale of contracts of indemnity,* it has become one of the largest and most important branches of commerce." That case, however, involved only the question whether the insurance business conducted on a national scale has characteristics which would subject it to the operation of the Sherman Anti-Trust Law, and the statement in the majority opinion that the modern insurance business is *"Built upon the sale of contracts of indemnity"* is mere *dictum,* and, as Mr. Chief Justice Stone pointed out in his dissent, the majority holding is contrary to a long line of cases, beginning with *Paul* v. *Virginia,* 8 Wall. (U. S.) 168, 183, 19 L. ed. 357, 364, which held through the course of seventy-five years, that the business of insurance is not interstate commerce. In the very illuminating dissenting opinion of Mr. Chief Justice Stone, 322 U. S. 573, 88 L. ed. 1468, 64 S. Ct. 1184, it is stated that: "The contract of insurance does not undertake to supply or market goods or services * * *." Of course, a contract of insurance does not supply or market goods or services: the insurer under it renders no service to the insured, but simply by virtue of the contract undertakes to indemnify the insured in case of loss. The only services involved in the transaction are the services which plaintiff in this case renders under the agency agreements to the insurers in the solicitation of insureds and prospective insureds, and in issuing, or bringing about the issuance, of the policy of insurance, which, in turn, involves the collection of premiums and the accounting therefor to the insurer. In our opinion, the case of *United States* v. *South-Eastern Under-*

*writers Assn., supra,* limited as it is to the question whether the modern insurance business as nationally conducted has some of the characteristics of interstate commerce, so as to render it subject to the Sherman Anti-Trust Law, is not binding on this Court, which is charged with the duty of determining whether a tax statute, duly enacted by the Legislature of this State, is applicable to a citizen thereof. To like effect, that this Court in the interpretation and application of a statute enacted by the Legislature of this State will not be controlled by the decisions of other Courts, which involve other statutes, whether enacted by the Congress of the United States or the legislative bodies of other States, see *Kanawha Banking and Trust Company* v. *Alderson, State Tax Commissioner,* 129 W. Va. 510, 518, 519, 40 S. E. 2d 881.

In support of plaintiff's position that "plaintiff's agency representation of insurance companies is not a service business", plaintiff cites *Fleming* v. *Kirschbaum* Co. (C. C. C. 3), 124 F. 2d 567; *Guess* v. *Montague,* 51 F. Supp. 61; *Coast Van Lines, Inc.* v. *Armstrong* (C. C. A. 9), 167 F. 2d 705; *Roland* v. *Walling,* 326 U. S. 657, 66 S. Ct. 413, 90 L. ed. 383; *Strand* v. *Garden Valley Telephone Co.* (D. C. Minn.), 51 F. Supp. 898, 903. These cases involved the definition of the term "retail or service establishment" in the Fair Labor Standards Act, prior to the amendment of 1950, 29 U. S. C. A. 213 (a) (2), which exempted "retail or service" establishments from its operation. These cases simply held, *inter alia,* that service establishments, whose employees are excepted from the operation of the Act, are establishments which deal with the consuming public generally. Clearly they are not in point. Plaintiff is not conducting a "retail or service establishment", and he is liable for taxation under Code, 11-13, as amended, if he is engaged in a "service business or calling". See note to *Lonas* v. *National Linen Service Corp.,* 136 F. 2d 433, 150 A. L. R. 697, note 700-713, inclusive. In the *Lonas* case the Court said: "Since the related terms [in the Fair Labor Standards Act "retail" and "service"] are coupled in the same sentence and are used in the disjunctive with the

terms 'retail' and 'service' both modifying the word 'establishment', they refer to employers who deal directly with private consumers * * *."

But even if the transaction consists of a sale of intangible personal property, choses in action in the nature of a contract, as counsel for plaintiff contend, the agent has no interest therein after the contract is consummated, except for his duty to deliver the policy or bond to the insured, collect and account for the premiums, and, where the insurer has the right, to effect a cancellation when directed to do so. If the transactions, in which plaintiff as the agent of the listed companies is engaged, are sales of intangible property or choses in action in the nature of contracts, as plaintiff contends, with which contention we do not agree, the issuing of policies and the indemnity bonds was brought about by the services rendered by the plaintiff as the agent of the insurance companies, which services, in our opinion, are a service business within the meaning of Code, 11-13-1, as amended. This section defines "service business or calling" as including "all nonprofessional activities engaged in for other persons for a consideration, which involve the rendering of a service as distinguished from the production or sale of tangible property, but shall not include the services rendered by an employee to his employer." Clearly, the services rendered by the plaintiff in the solicitation of prospective insureds for insurance and his activities in causing a policy to be issued, and in the collection of and accounting for premiums are "nonprofessional activities engaged in for other persons for a consideration, which involve the rendering of a service." That plaintiff's activities are nonprofessional is clear from the wording of the statutory definition of "service business or calling"; and equally is it clear that the activities involve the rendering of a service, not to the public in the instant case, but to the insurance ·company or companies which have issued the policy or policies; and, in our opinion, it is important that this statutory definition does not include "some" non-

professional activities, but expressly is worded to include "all nonprofessional activities."

We are of opinion that Code, 11-13-1, as amended, containing as it does the statutory definition of "service business or calling" is clear and unambiguous. In this we are guided by the ancient rule of statutory construction, *expressio unius est exclusio alterius*. One phase of the rule is that "If a statute expressly excepts one class, which would otherwise be within its terms, the exception negatives the idea that any other class is to be excepted." 17 M. J., Statutes, Section 45. See also *Trustees of American Bank* v. *McComb*, 105 Va. 473, 54 S. E. 14; and *Commonwealth* v. *One Packard Car*, 5 Va. L. Reg. (N. S.) 47.

When the Legislature in Section 1 of Code, 11-13, as amended, expressly excepted from the definition of " 'service business or calling' ", "the production or sale of tangible property" and the services rendered by an employee to his employer, it exhibited a legislative intent to negative "the idea that any other class is to be excepted," which, of course, would include plaintiff's activities as the duly licensed agent of the listed companies.

The statute being clear and unambiguous and, in our opinion, the legislative intent plain, it is the duty of this Court to apply the statute and not construe it. *State* v. *Epperly,* 135 W. Va. 877, 65 S. E. 2d 488, 492.

Since the statute is unambiguous, this Court will not resort to prior statutes to determine the meaning of the statute under consideration. *State* v. *Epperly, supra; Hereford v. Meek,* 132 W. Va. 373, 52 S. E. 2d 740; 17 M. J., Statutes, Section 34. It follows that the plaintiff's statutory history of Code, 11-13-2h, as an aid in the construction of Code, 11-13-1, as amended, and 11-13-2h is without warrant.

We are also of opinion that plaintiff's effort by a "comparison of the taxation of a service business by the consumers sales tax statute [Code, 11-15] and the business and occupation tax statute [Code, 11-13]" should not control in this proceeding the interpretation or determination

of plaintiff's liability to taxation under the latter statute. In the first place this declaratory judgment proceeding raises the single issue on the certificate whether plaintiff is subject "to the imposition of the Business and Occupation Tax as provided by said Article 13, Chapter 11 of the Code, and more particularly Section 2h"; and, in the second place, where, as here, the statutory provision is clear and unambiguous, we are not at liberty to read the consumers' sales tax statute and the business and occupation tax statute in *pari materia. State* v. *Epperly, supra;* 50 Am. Jur., Statutes, Section 348. In the *Epperly* case the Court said at page 881 of the opinion contained in Volume 135, West Virginia Reports, and appearing in 65 S. E. 2d at page 491: "The rule that statutes should be read and construed together is a rule of statutory construction and will be applied only as an aid in determining the meaning of a doubtful or ambiguous statute and it may not be invoked when the language of the statute is clear and unambiguous."

Plaintiff's complete freedom from control over his business activities for the listed insurance companies is inconsistent with the position that the relationship between plaintiff and the insurance companies is that of employee-employer. Plaintiff is, according to the allegations of the petition and the exhibits filed therewith, not compensated by wages: the only compensation which he receives is in the form of commissions deducted from premiums paid by those insured to the plaintiff, who deducts the stated commission and then is required to remit the residue of the premiums to the company or companies entitled thereto. Plaintiff is free either to accept or reject any application for a policy of insurance or contract for indemnity bond which he receives from a prospective insured, and to issue the policy or bond in any company with which he has an agreement authorizing him to act for it. He is under no obligation to any of the companies, other than to make the proper accounting for the premiums, less the commissions, and when so-directed to effect a cancellation of the policy or contract. In soliciting insurance the plain-

tiff may represent any one or more of the listed companies, as he chooses, and may place the renewal of any policy which expires in the company which originally issued it,. or any other company, whether listed or not.

Code, 33-2-37, as amended, levies a tax of two per cent on the *gross* premiums received by insurance companies, which includes the commissions to which plaintiff is entitled. On this basis it is contended by plaintiff that if Code, 11-13, as amended, is applicable to plaintiff taxpayer, the amount of plaintiff's commissions would be double taxed, that is, under Code, 33-2-37, as amended, the insurance companies would pay a two per cent tax on the gross premiums, including the amount of plaintiff's commissions, and plaintiff would pay the one per cent tax under Code, 11-13, as amended. It is contended by plaintiff that double taxation is never favored, and that statutes should not be interpreted as so providing, in the absence of a legislative intent, shown by clear and unequivocal language.

While the incidence of the two per cent tax under 33-2-37, as amended, and the one per cent tax, under Code, 11-13, as amended, falls upon the amount which plaintiff is entitled to receive as commissions, that does not result in double taxation so as to inhibit the application of Code, 11-13, as amended, to the plaintiff; neither does it evince a legislative intent that Code, 11-13, as amended, should not apply to plaintiff and other insurance agents similarly situated; nor does it violate the inhibitory provision of Article X, Section 1 of the Constitution of West Virginia, which provides that taxation shall be equal and uniform. We say this because the two per cent tax is paid and payable by insurance companies and the one per cent tax, under our holding, is payable by insurance agents licensed by the insurance commissioner to insurance companies. "By duplicate taxation is understood the requirement that one person or any one subject of taxation shall directly contribute twice to the same burden, while other subjects of taxation belonging to the same class are required to contribute but once." 18 M. J., Taxation, Section 18. Thus,

it has been held that the assessment of income from property, apart from the property producing the income, does not constitute double taxation. *Harvey Coal & Coke Co.* v. *Dillon,* 59 W. Va. 605, 53 S. E. 928, 6 L. R. A. (N. S.) 628; nor is a license tax on a business or occupation and an *ad valorem* tax on capital of the business or the property used therein double taxation. *Hope Natural Gas Co.* v. *Hall,* 102 W. Va. 272, 135 S. E. 582, affirmed in 274 U. S. 284, 47 S. Ct. 639, 71 L. ed. 1049. There is no double taxation where the subject is held by different titles. It has thus been held that both a debtor and a creditor may be taxed, the one on his property and the other on his security, though the mortgagor is taxed on the full value of his property, and the mortgagee on the full amount of the debt secured by the mortgage. *Myers* v. *Commonwealth,* 110 Va. 600, 66 S. E. 824. Likewise the taxing of both a leasehold and the property leased is not double taxation. *Harvey Coal and Coke Co.* v. *Dillon, supra.* As to what does not constitute double taxation, see generally 18 M. J., Taxation, Section 19, and the cases cited in the footnotes thereto.

We therefore answer in the affirmative the single certified question, and, so answering, reverse the ruling of the Circuit Court of Kanawha County in overruling the defendant's demurrer to plaintiff's petition.

*Ruling reversed.*